## HARDIN vs. HARDIN.

1. Abandonment by the wife is not a good ground of divorce, where an unfounded charge of infidelity, made by the husband and never retracted, is the sole cause of the separation.

Error to the Chancery Court of Limestone. Tried before the Hon. David G. Ligon.

THE bill in this case was filed by John Hardin, the plaintiff, against his wife, Susan Hardin, the defendant in error, for a divorce, on the ground of three years' voluntary abandonment. The chancellor dismissed the bill on final hearing, which is now assigned as error.

ORMOND and E. J. JONES, for plaintiff:

1. The plaintiff in error has brought himself within the strict letter of the statute, and has fully established not only that his wife voluntarily abandoned him and left his bed and board for the space of three years, but that she refused to return on his repeated solicitation.—Clay's Dig. 170.

2. The wife admits the abandonment, but insists that it was not voluntary, because the husband had accused her of sexual intercourse with other men. This defence is the *compensatio criminum* of the canon law.—Shelford on Marriage and Divorce, 440.

3. To make recrimination a bar, the crime for which the divorce is sought and that which is *recriminated* must be of the same nature. Thus, if a divorce is sought for the crime of adultery, it is a sufficient answer that the party applying for it

has been guilty of the same offence. But even malicious diser-
tion by the husband is no bar to a divorce by him from the wife
for her subsequent adultery.—Richardson v. Richardson, 4 Por.
478; Sullivan v. Sullivan, 2 Addams, 299; 2 Eng. E. R. 304.

4. The acts of the husband relied on as a bar to the divorce
do not constitute legal cruelty within the purview of the statute.
There must be actual violence offered to the person, attended
with danger to life or limb, or there must be a reasonable ap-
prehension of it. No mere language, however insulting or op-
probious, will constitute cruelty under the statute.—Mayler v.
Mayler, 11 Ala. 620; Evans v. Evans, 1 Haggard, 35; Har-
ris v. Harris, 2 Phillimore, 111; Oliver v. Oliver, 1 Hagg. 361;
Waring v. Waring, 2 Phill. 132; Westmeath v. Westmeath, 2
Hagg. Sup. 1, (4 Eng. Ecc. R. 269;) Lockwood v. Lockwood, 2
Curteis, 281; Durant v. Durant, 1 Hagg. 733, (3 Eng. E. R. 327.)

5. A bill for a divorce, under our statute for abandonment,
bears a strong analogy to a suit for restitution of conjugal rights
in the Ecclesiastical Courts of England, and in those courts it
has been held that no acts of cruelty were effectual to bar a suit
for restitution, except those alone which would entitle the party
pleading them to a sentence of separation.—Shelford on Mar. &
Div. 577; Homes v. Homes, 2 Lee, 110; D'Aguillar v. D'Aguil-
lar, 1 Hagg. 773; Oliver v. Oliver, 1 Hagg. 361.

6. Lastly: If it be conceded that a course of improper con-
duct on the part of the husband towards the wife, rendering her
life miserable and forcing her to abandon his house, would jus-
tify the court in refusing its aid when he applied for a divorce,
this is not such a case. Here the cause of the difference was
the jealousy of an old man, who however never made it public,
recanted his suspicions and made every effort personally and
through the agency of friends to induce her to return. She
must therefore submit to the consequences of her own conduct.
See Gray v. Gray, 15 Ala. 779.

BRICKELL and C. C. CLAY, Jr. for defendant:

The generic import of the word *voluntary* and the sense in
which it was used by the legislature, is, acting by choice or
spontaneously, *without being impelled or influenced by another.*
Can it be said that she was unimpelled and uninfluenced by her
husband to leave, when he charged her with sexual intercourse

with other men; or can it be contended that nothing short of cruel *acts* on his part could disturb her *free will?* Certainly not. An indecent exposure of her person or a blow by her husband would be less galling to the pride or blighting to the hopes, or chilling to the affection of a virtuous and sensitive wife, than his charging her with *adultery.* A wounded reputation is more painful to conscious innocence than the most cruel physical torture. Now there is no doubt that personal violence, or well grounded apprehensions of it, would not only *justify* a wife in abandoning her husband, but even entitle her to a divorce. Should she not be *excused* for abandoning him for destroying her peace of mind by words more humiliating and more grievous than blows? Is no treatment "cruel, barbarous and inhuman" save that which inflicts corporeal suffering? If not to obtain a divorce, yet there certainly is to prevent one, as in the present case.

The entire policy of the constitution and legislation and judicial decisions of this State is opposed to divorces. Such, too, seems to be the policy wherever the common law prevails. Hence divorces cannot be obtained by consent or collusion of parties or by stratagem of either party. Now to maintain that a husband may destroy his wife's happiness and reputation by the most offensive imputations, and yet if she leave his bed and board for three years he shall have his divorce, is not only contravening that policy, but enabling the malicious husband to take *advantage of his own wrong* and to procure a divorce *ad libitum.* Hence the uniform rule in divorce cases, as well as others, obtains in equity decisions, that he who seeks relief must come with clean hands—must show that he has not been at fault—at least, has not caused by his own misconduct the grievance complained of. Thus, a wife, to obtain a divorce by reason of husband's cruelty, must prove his ill treatment of her not merited or provoked by her own misconduct.—Best v. Best, 2 Ecc. Rep. 163; 2 Kent's Comm. (last ed.) 128, and references. And she is not entitled to divorce by reason of cruelty, unless she is of good temper and behaves well and dutifully towards him.—6 ib. 81. And she is not, when she has by her conduct driven him from her society and continuously denied him the *locus penitentiæ* and privilege of returning. In such a case her consent to the separation must be intended.—Gray v. Gray, 15

Ala. 779. To entitle him to any benefit or advantage of his proffers of reconciliation, the court should be satisfied that he had repented his unkind and unjust charge against her virtue— had retracted it and would not repeat it—or, in the words of a learned court, that "his wife could return home in safety, and would be received and treated kindly as a wife ought to be."— Taylor v. Taylor, 4 Dessausure, 165; 2 ib. 45.

PARSONS, J.—It is settled in England that malicious desertion is no cause for a divorce. For this there is a remedy there in the Ecclesiastical Courts, by a suit for a restitution of conjugal rights. This remedy does not exist here, but it is enacted that if a wife *voluntarily* leave her husband's bed and board for the space of three years with intention of abandonment, this is sufficient cause for a divorce in his favor.—Clay's Dig. 170, § 3. The defendant in the present case certainly left her husband and remained away for three years and more before this suit was brought; but the question is whether she did so voluntarily, within the meaning of the statute? This must be determined by the evidence. It clearly appears by the depositions that she left and remained from him as already mentioned: that she knowingly left and remained away against his wish, and that she refused to return, though requested by him to do so. But it also appears that she left him because he accused her of criminal intercourse with other men, and it does not appear that there was any cause for the charge, or that he ever retracted it: On the contrary, it appears that at the very time he was desirous of her return, he in effect repeated his suspicion of her guilt in the neighborhood; in such a way, however, as to show that there had never been conclusive evidence of it even in his own mind. It is therefore clear that so far as she had cause to leave him, she had cause to remain away from him. Did she leave and remain away voluntarily? If the husband look to England, whence almost all our laws come, for authority to sustain his application for a divorce, he fails; and coming to our statute he finds that he is not sustained, unless she left him voluntarily, or of her free choice. Can he be heard to say that she left and remained from him voluntarily, when he had made it necessary for her to choose between the abandonment and the most wretched state of human existence

Hardin v. Hardin.

—that of living with a husband who had accused her of unchaste conduct, and this, so far as there is any evidence, without the smallest cause. We feel that we can acquit our legislature of the error of using the word "voluntary" in such a sense. The case then is, that she left him for his groundless charge; that he never retracted but repeated it, and that for this cause she refused to return. She would neither degrade herself nor him by living with him under such circumstances, although as the proof shows she declared her attachment for him at the very time of the separation.

We are far from saying that this accusation is a ground upon which the defendant could have obtained a divorce from her husband. However groundless and cruel, it was not sufficient for that purpose. But our opinion, from the evidence, is that it was the cause of her leaving and remaining from him unwillingly—hence, that she did not leave or remain away voluntarily, but under an unhappy necessity which he created and continued; and for this reason his cause of divorce fails. She does not set up a distinct matter in bar of his claim to a divorce, but she makes her excuse for leaving him a part of the ground which he relies on for a divorce, and taking the fact of the ground and of the excuse together, there is, we think, no cause for a divorce. This view distinguishes this case from some of the cases relied on by the plaintiff's counsel, in which distinct matters were set up, and in which it was held that they must be sufficient causes of divorce of themselves. We do not say but that if he had proved a ground for his suspicions, or retracted them and assured her of his confidence, he would have been entitled to a divorce. From the evidence, it is more than probable that if he will yet retract his charge and assure her of his confidence she will live with him. She has proved that she has a deep sense of her injury, by refusing for so long a time to live with him, although she acknowledged her attachment for him at the time of the separation. This ought to make him doubt the cause of his jealousy, and if this suggestion should lead to a reconciliation, it is far better than a divorce.

It is true, as contended by the plaintiff's counsel, that a man under the circumstances of this case may in the Ecclesiastical Courts have a suit for the restitution of his conjugal rights, in which the wife will be compelled to return to cohabitation un-

Hardin v. Hardin.

less she can plead a fact in bar which will entitle her to a sentence of separation, and that no facts are sufficient to bar the proceeding except such as are sufficient as a ground for a divorce in an original suit. But in such cases the sentence of the court usually enjoins the husband to recieve his wife home in that character, and to treat her with conjugal affection and to testify the same to the court; and the consequence of non-compliance with the decree of the court is excommunication and imprisonment; and the monition is that the husband shall not only take her back, but that he shall treat her with conjugal kindness.—Shelford on Marriage and Divorce, 574 to 582, and authorities cited. According to the ecclesiastical law, the defendant in this case could not plead her husband's charge of infidelity against her, in bar of a suit for restitution of his conjugal rights, inasmuch as she could not for that charge alone have obtained a divorce; nothing short of that being a good plea in bar to a suit for restitution of conjugal rights. Why was that? It was because the contract of marriage was of the highest degree of solemnity, of the greatest obligation. But if in this case it is to be dissolved because she left and remained from him for the most grave and groundless provocation on his part, then the marriage contract is of the least degree of obligation. The plaintiff's counsel will perceive that their argument puts it in the power of every husband to drive his wife from home by groundless accusations of the kind, and then to claim a divorce for the abandonment. This would bring the marriage contract to a very low degree of obligation and completely subvert the principle upon which the Ecclesiastical Courts have proceeded.—See Gray v. Gray, 15 Ala. 779.

Let the decree be affirmed.