SMALL v. THE C., R. I. & P. R. Co.

1. **Practice:** CHAMPERTOUS CONTRACT: WHO MAY PLEAD. It is no defense to an action that the plaintiff has made a champertous contract for its prosecution.

2. ———: ASSIGNMENT: CORPORATION. The power of a corporation to assign a cause of action cannot be questioned by the defendant in an action thereon by the assignee.

3. **Railroad:** FIRES CAUSED IN OPERATING: CONTRIBUTORY NEGLIGENCE. In an action to recover the value of an elevator, alleged to have been burned by fire communicated to it from the building of another which was set on fire by sparks from a locomotive on defendant's railroad, it was held that the contributory negligence of the owner of the building first burned would not constitute a defense.

4. ———: ———: EVIDENCE: INSTRUCTIONS. Rulings on the admissibility of evidence, and instructions given, considered and approved.

5. ———: ———: DAMAGES. The fact that the fire was communicated to the plaintiff's elevator from another building, and not directly from the defendant's engine, would not render the damages too remote to be recoverable.

6. **Practice in the Supreme Court:** REDUCTION OF VERDICT. The Supreme Court will not reduce the amount of a verdict on appeal where no claim that it was excessive was made in the trial court.

*Appeal from Jasper Circuit Court.*

WEDNESDAY, APRIL 6.

THIS is an action to recover the value of a grain elevator, and certain grain and other property which it is alleged were destroyed by fire, set out by defendant in operating its rail-

road. Two causes of action are set out in the petition—one of said causes being for the destruction of the elevator and one Fairbanks' scale, which it is alleged were the property of the Farmer's Union Elevator Company, and that said company after the said property was destroyed by fire assigned its claim for damages to the plaintiff. The other cause of action is for the loss by fire of other property which it is alleged was owned by the plaintiff.

There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals.

*H. S. Winslow, Smith & Wilson* and *Matt. Phelps,* for appellant.

*S. H. Fairall, Bonorden & Ranck* and *John N. Rogers,* for appellee.

ROTHROCK, J.—I. In the seventh division of the answer the defendant pleaded as a defense that before the commencement of the suit it was agreed, between the plaintiff and his attorneys, that said attorneys should carry on the suit at their own costs and expense, and that they should receive for their services and said costs and expenses about one-sixth of the amount of the recovery, if the litigation should prove successful, and if they should fail in the action, they should receive nothing. It was averred that said agreement and contract was against public policy, champertous and void. There was a demurrer to this division of the answer, which was sustained. To this ruling exceptions were taken, and error is assigned thereon.

1. PRACTICE: champertous contract: who may plead.

That the averments of the answer would be a good defense to an action by the attorneys to recover of the plaintiff upon the alleged contract may, for the purposes of this case, be admitted. But that it can be interposed by the defendant to defeat a recovery by the plaintiff, in his own name, for the damages sustained by him, is quite another question. That

there are authorities, the most respectable, which hold that when it appears that a plaintiff is prosecuting an action under a champertous arrangement between himself and his attorney, the action should be abated, must be conceded. But on the other hand there are cases which hold the contrary doctrine. In *Hilton v. Woods*, L. R. 4 Eq. Cas., 432, Malvin, V. C., said: "I have carefully examined all the authorities which were referred to in support of this argument, and they clearly establish that when the right of the plaintiff, in respect of which he sues, is derived under a title founded in champerty or maintenance, his suit will on that account necessarily fail. But no authority was cited, nor have I met with any, which goes the length of deciding that, when a plaintiff has an original and good title to property, he becomes disqualified to sue for it by having entered into an improper bargain with his solicitor as to the mode of remunerating him for his professional services in the suit or otherwise."

See also *Elborough v. Ayres*, L. R., 10, Eq. Cas., 367; *Whitney v. Kirtland*, 27 N. J. Eq., 333; *Robinson v. Beale*, 26 Ga., 17.

It seems to us that there is no sound reason nor just principle in a rule which would allow a party to defeat a just cause of action because the opposite party has made a contract with his attorney which is utterly void, and which, therefore, cannot be enforced by either of the contracting parties. As to the defendant in this action, who seeks to avail itself of the illegal contract, the rights of the parties are the same as if it had never been made. The plaintiff is still the real party in interest. The illegal and champertous contract, being void, divests him of no right. That by reason thereof he should be disabled from asserting his rights we do not believe. It is enough that the parties to such contracts be authorized to repudiate them, without allowing others to exonerate themselves from just obligations by reason thereof. As is said by Day, J., in *Allison v. C. & N. W. R. Co.*, 42 Iowa, 274,

" If he (the defendant in the action) could do so, an unheard of effect would be given to a void agreement. Suppose a suit upon a promissory note is prosecuted under a champertous arrangement between the plaintiff and his attorney; does this avail the defendant to defeat an otherwise just liability? Will not the law rather compel the defendant to perform his undertakings and leave the question of champerty to be determined between the plaintiff and his attorney?"

II.   In another division of the answer it was alleged that the Farmers' Union Elevator was a corporation organized under the laws of Iowa; that its affairs were managed by a board of directors of which plaintff, at the time of the fire and at the time of the assignment, was a member; that the elevator building described in plaintiff's petition, and the machinery connected therewith, together with the land upon which it was situated, and its franchise under and by virtue of its articles of incorporation, constituted the entire property of said corporation, and all of said property was necessary to the prosecution of the business of said corporation, the same being solely for the purpose of storing and handling grain; that said corporation was largely indebted to various parties, and judgments had been rendered against it, and the elevator building, and the land upon which it was situated, had been advertised for sale under execution issued upon a judgment against said company; that by the articles of incorporation of said company it is nowhere provided that its board of directors may alienate the property essentially necessary for the transaction of the company's business, or give away its funds, or deprive the corporation of the means of accomplishing the objects of its creation, or so dispose of its property as to prevent creditors from reaching the same; that the assignment of the alleged claim for burning the said elevator building and other property to the plaintiff was without consideration, and its effect was to destroy the corporation and so alienate the property as to deprive it of its means, and prevent it from accomplishing

*2. ——: assignment: corporation.*

the purpose for which it was created, and to gratuitously dispose of its property in fraud of the rights of the stockholders and creditors of the company; that the alleged assignment was fraudulent and void, and in excess of the powers and authority of the board of directors, and conferred upon plaintiff no right whatever.

There was a demurrer to this division of the answer, which was sustained. The defendant assigns this ruling of the court as error.

That the assignment in question, without consideration, to a member of the board of directors would not be binding upon the stockholders or creditors of the corporation may be conceded. But the defendant is neither a stockholder nor a creditor. It has no right as a mere stranger to insist that the corporation may not donate its property to whom it pleases. Besides, the assignment did not and could not have the effect of dissolving the corporation. It was the assignment of a mere *chose in action*—a right to sue for and collect a claim for damages. It appears to us the ruling of the court upon the demurrer to this division of the answer, as well as the rulings upon the admission and rejection of evidence upon the same question, and the giving and refusal of instructions in relation thereto, are so clearly correct as to demand no further consideration at our hands. We think the court might well have said to the jury, as matter of law, that the written instruments exhibited with the petition and introduced in evidence operated as an assignment of the claim to the plaintiff.

III. There had been a previous trial of the action and a verdict and judgment for the plaintiff, which, upon appeal to this court, was reversed. 50 Iowa, 338. The plaintiff was a witness in his own behalf, and upon cross-examination counsel for defendant interrogated him as follows:

*Question.* "Will you say you have not said, in substance, that the only thing you were fighting for now was to get a bigger judgment than before?

*Question.* " Have you, at any time since this case was transferred to this county or place, said in substance that you had no apprehension about getting a judgment. All you cared about was to get a bigger judgment than you had before?"

Objection was made by these questions, and the objection was sustained. There was no error in this ruling. The witness had already .answered substantially the same questions without objection, and, besides, the refusal to permit the question to be answered does not appear to us to be prejudicial error. That the plaintiff had perfect confidence in the justice of his cause, and in his right to a larger verdict than he obtained on the first trial, ought not to prejudice him as a witness nor affect his right to recover.

IV. The plaintiff claimed that the fire was set out by an engine of the defendant, and that the sparks of fire emitted from the engine set fire to an elevator owned by one Libby, which stood some twenty feet from the railroad track, and that from this elevator the fire was communicated to the said Farmers' Union Elevator, standing some seventy feet therefrom. The defendant, in its answer, alleged that the Libby elevator was constructed of pine and other materials; that chaff, dust and other combustible matter were permitted to settle in and upon said elevator; that it was not provided with any appliances for putting out fire; that the doors of said building and other avenues thereto were left open, whereby fire could easily escape on to and in said building, and that notwithstanding these facts the plaintiff allowed the property to be and remain exposed to the incidents and dangers of fires from trains. It was also alleged that the Union elevator and the plaintiff's property were negligently kept in the same condition.

3. RAILROADS: fires caused in operating: contributory negligence.

. The evidence shows, beyond question, that the fire originated in or upon the Libby elevator, and was communicated therefrom to the building and property of the plaintiff. A witness was called by the plaintiff who testified that at the

time of the fire he was employed by Libby in laboring about his elevator, and that there was no fire when he left at noon; that the machinery was run slow and could not have been heated, etc., and that he first saw the fire on the roof of the elevator. In cross-examination he was asked, "what apparatus was there in the elevator for the purpose of protection against fire?" The question was objected to, and the objection was sustained. The defendant also asked the court to instruct the jury to the affect that there could be no recovery in the event that they found that the Libby elevator was set on fire by reason of the negligence of the operators of the same contributing thereto. These instructions were refused. Counsel have discussed the question of contributory negligence as applicable to the facts of the case, and the court, while refusing to give the instructions asked by the defendant, did instruct the jury that no recovery could be had if the plaintiff himself was guilty of negligence which contributed to the injury, and that if the Union Elevator Company was guilty of contributory negligence plaintiff could not recover on account of the loss of its property.

Whether, under section 1289 of the Code, which provides that "any corporation operating a railway shall be liable for all damages by fire that is set out or caused by operating of any such railway," contributory negligence upon the part of the owner may be a defense to an action, we need not determine in this case. The court below seems to have been of the opinion that such defense was proper, and of this the defendant does not, and cannot, complain. But we are clearly of the opinion that any negligence of the party in possession of the Libby elevator cannot be imputed to the plaintiff, nor to his assignor, the Union Elevator Company. There is no evidence whatever that the plaintiff or his assignor had any control over the Libby elevator. On the contrary it appears that it was owned, operated and controlled by another. We can conceive of no state of the law, with or without the statute, which would hold a person responsible for that which he

had no power to control. He certainly was not guilty of contributory negligence because he did not take up his property and remove it to so remote a distance as not to be exposed to a fire which might destroy the Libby elevator.

V. F. A. Small was examined as a witness for the plaintiff. He testified that he was president of the Union Eleva-

4. ——: ——: tor Company, and gave his estimate of the value
evidence: in-
structions. thereof, and also the facts as to the assignment of the claim for damages to the plaintiff. On cross-examination he was asked the question, " did the corporation or board of directors have a meeting in January, 1876?" Objection was made to the question as not cross-examination. The objection was sustained and an exception taken. The ruling was correct on the ground upon which it was placed. If, however, the evidence was improperly excluded at the time, it was error without prejudice, for the abstract shows that the witness afterwards, and without objection, made a full statement of the dates of the meetings held, and the record of proceedings, or part thereof having reference to the subject matter in controversy, was introduced in evidence.

VI. One Kellogg was called as an expert by the defendant, to testify to the value of the building in controversy. He stated that it was worth from $6,500 to $7,000. Thereupon the defendant's counsel propounded this question to the witness—" Could it have been erected at the time for that money?" Answer:—" I think it could. *I would be willing to take the contract.*" The last sentence of the answer was excluded upon motion of the plaintiff as being "immaterial and not responsive." This ruling was clearly correct. That it was not responsive is apparent, and when the witness stated the value of the building, the cost of its constituent parts, and the actual outlay necessary for its construction, as bearing upon the aggregate value of the structure, it was immaterial as to what he might have been willing to erect it for upon contract. At most it would have been but an argument of

the witness in substantiation of his estimate of value, and not a proper fact for the consideration of the jury.

VII.   Another witness who was present at the time of the fire, after detailing what he saw of the conflagration, was asked these questions—"And if there had been a fire kindled on the outside of the roof could you have seen that, at that time?"   "And if there was any fire on the outside of the roof at that time, and you had a bucket of water with you, could you have extinguished it?"   "How extensive, from the appearance of the smoke, and where it issued through the roof, was the fire inside?"   These questions were objected to as calling for the conclusions of the witness.   The objections were sustained.   These rulings appear to us to be correct. The questions call for the mere conclusion or opinion of the witness upon matters which it was the province of the jury to determine from the facts detailed by the witness.   The witness had already given in evidence all the facts claimed to have been within his knowledge, in relation to the fire, its location and extent.

VIII.   A witness testified that a certain kind of spark arrester had been used upon a certain railroad.   He was asked this question—"State how long that road had used that kind of spark arresting apparatus, and if it abandoned it, if you know."   An objection to this question was sustained.   The ruling of the court was correct, if for no other reason than that the witness had already stated all the facts, of which he claimed to be in possession, touching the subject inquired about.

In another assignment of error it is claimed that the defendant asked the same witness his opinion, from his own knowledge, of the practicability of engines equipped with spark arresters such as he described, and that an objection to the question was sustained.   Whether the question was propounded or not is left in some doubt, after an examination of the record.   But if it was asked there was no error in sustaining the objection, because the witness had stated distinctly

that all he knew upon the subject was derived from others, and this was excluded as hearsay. After such a statement it was the duty of the court to preclude further inquiry as to his personal knowledge of the matter.

IX. The plaintiff introduced evidence as to the value of the labor necessary to put the machinery in the elevator. This was objected to, and the admission of the evidence is assigned as error. The evidence was competent and proper. It was the right of the plaintiff in examining his witnesses as to the value of the building to have them estimate not only the aggregate value of all its parts, but to give the value of the lumber used in its construction, the value of the machinery, the cost of the labor necessary to erect the building and place the machinery therein, and the like.

X. Exceptions were taken to the rulings of the court upon the exclusion of certain testimony as to the value of corn on the day of the fire. We think the evidence was properly excluded. In one of these rulings it appears that the court excluded the statement of a witness as to what he paid for corn at Malcolm, some six miles distant from Brooklyn. He had fully stated the value on said day, and the difference in value between Malcolm and Brooklyn. This was all that defendant could properly ask the witness in his examination-in-chief. In cross-examination a witness may properly be interrogated as to particular sales for the purpose of testing his knowledge as to the matter under investigation. The testimony of another witness as to the value of corn was properly excluded because he did not show himself qualified to testify on that question. Objections were made to certain evidence introduced by the plaintiff in rebuttal. The ground of the objections was that the evidence was not rebutting in its character. An examination of the record satisfies us that there was no abuse of the discretion of the court in this particular.

XI. There is one other alleged error upon a ruling as to the admission of evidence which remains to be noticed. It

appears that one Marvin, the engineer who operated the engine which it is alleged set out the fire, testified as a witness for the plaintiff upon the first trial. After the trial the witness died. The short-hand reporter who took down the testimony upon the former trial was called as a witness to the testimony of the deceased witness. He stated that he could give the substance of what the deceased witness testified to in relation to there being a hole in the netting of the engine. Plaintiff's counsel said " please do so." The defendant objected " as immaterial, and for the reason that the witness is not asked for the evidence, but only the substance." The objection was overruled. In the answer the witness, among other things, said that he remembered the material testimony on the points, not simply from his notes.

It was perfectly competent for the witness to give the substance of the testimony of the deceased witness. If it appeared from the answer that the witness was not qualified so testify, objection should have been made, and the court should have been requested to exclude the evidence from the consideration of the jury. See Green. on Ev., section 165; *Harrison v. Charlton*, 42 Iowa, 573; *Fell v. B. C. R. & M. R. Co.*, 43 Id., 177. But taking the testimony of the witness entire, which we need not here repeat, we think that he did undertake to give the substance of all of the testimony of the deceased witness.

XII. An exception was taken to the sixth paragraph of the court's charge to the jury. It is to the effect that as it is not claimed any person saw the fire communicated by the defendant's engine to the building, the plaintiff must show such facts and circumstances as will authorize the jury as reasonable men, in the exercise of a sound judgment, and in the light of their experience as individuals in the ordinary affairs of life, to *infer* that the fire was so communicated. It is contended that by this instruction the jury were warranted in finding by mere inference that the defendant set out the fire. The jury had been instructed that they must find from

a preponderance of evidence that the defendant set out the fire in operating its railroad, and in the instruction complained of it seems clear to us that the court meant simply that a finding, or conclusion, or inference, might be based on circumstantial evidence as distinguished from positive evidence, and that the jury must have so understood the instruction.

XIII. The giving of the seventh paragraph of the charge to the jury is assigned as error. It authorized the jury to consider whether there was an excessive amount of steam used at the time it is alleged the fire was set out. It is said there was no evidence showing the amount of steam the engine was carrying, nor how much was used. But the evidence is that such an amount of steam was used that the driving wheels slipped, and a great number of cinders escaped from the smoke-stack. Other objections are made to this instruction; they relate to an omission to recite certain facts to the jury in detail. It is urged that the recital as far as made is partial to the plaintiff, and although the jury are directed to consider all the circumstances as shown by the evidence, yet it is claimed this was insufficient. A careful examination of the instruction leads us to the conclusion that it is not unfair in this respect.

XIV. The evidence shows that the fire was communicated from the Libby elevator directly to the Union Elevator and the property of plaintiff, some seventy feet distant. The court instructed the jury that the damages claimed in the action were not remote, and recovery might be had therefor. This instruction was excepted to. It is unquestionably correct, and in accord with the great weight of authority. *Kellogg v. Mil. & St. P. R. Co.*, 94 U. S., 469; *T. P. & W. R'y Co. v. Pindor*, 53 Ill., 447; *Tweed v. Ins. Co.*, 7 Wall., 44; *Fent v. T. P. & W. R'y Co.*, 59 Ill., 349; *Kellogg v. C. & N. W. R. Co.*, 26 Wis., 224; *A. T. & S. F. R. Co. v. Sanford*, 12 Kan., 354; *Ingersoll v. S. & P. R. Co.*, 8 Allen, 438; *Perley v. Erie R. Co.*, 98 Mass., 414; *D. L. & West R'y Co. v. Salmon*,

39 N. J. Law, 299; *Clemens v. R. Co.*, 53 Mo., 366; *Poeppers v. M. K. & T. R'y Co.*, 67 Mo., 715.

XV. Lastly it is claimed that the verdict is excessive; that it is too large by at least $300. No motion was made in the court below for a new trial upon this ground, and the attention of the court does not appear to have been called thereto in any manner.

<div style="float:left">6. PRACTICE in the supreme court: reduction of verdict.</div>

The question cannot be raised for the first time in this court. Code, § 3168; *Dickey v. Harmon*, 26 Iowa, 501.

AFFIRMED.