MILLER ET AL. v. THE IOWA LAND COMPANY ET AL.

1. **Public Lands**: CONSTRUCTION OF GRANT: RAILROADS.   *Courtright v. The C. R. & M. R. R. Co.*, 35 Iowa, 386, followed and held decisive of the present case, as to the proper construction of the land grant involved.

2. **Conveyance**: VALIDITY OF: TRUSTEES.   Where trustees holding the title to lands for the benefit of a railroad company conveyed certain of the same for their own personal benefit, in payment for their services as such trustees, under authority from the board of directors of the railroad company, it was held that the validity of such conveyance could not be attacked by one claiming the land through a title adverse to that by which it was held by the railroad company.

*Appeal from Monona Circuit Court.*

THURSDAY, JUNE 16.

THIS is an action involving the title to some twenty-one hundred acres of land situated in Monona county.   The

plaintiffs claim title through the Iowa Central Air Line Railroad Company, under the original land grant act of Congress of May 15, 1856, and the act of the General Assembly of Iowa of July 14, 1856. The defendants claim title under the same acts, and the further acts of the General Assembly of March 17 and 26, 1860, and the act of Congress of June 2, 1864. Upon a trial by the court there was a decree entered for the plaintiffs. Defendants appeal.

*Joy & Wright* and *E. S. Bailey*, for appellants.

*Monk & Selleck*, for appellee.

ROTHROCK, J.—I. The acts of Congress and of the General Assembly of the State, under which the respective parties hereto claim title to the land in dispute, have several times been before this court. In the case of *Courtright v. The Cedar Rapids & Missouri River R. Co.*, 35 Iowa, 386, these legislative acts are fully set forth. The various provisions thereof need not, therefore, be repeated here. This controversy involves a part of the same lands, the title to which was determined in that case, to-wit., the one hundred and twenty sections which it was held the Iowa Central Air Line Railroad Company had the right and power to dispose of previous to the construction of any part of its road. It is contended that the sale of the one hundred and twenty sections was made without the knowledge, consent, or subsequent approval of the State, and that the company's board of directors was not authorized to make the selections and sell the land without such approval. But in the Courtright case it was determined that no restrictions were imposed by the State upon the right of the company to sell the land, except those imposed by the act of Congress making the grant. It is there said: "Though the grant to the State was absolute, reserving only the power to resume all rights to the lands remaining undisposed of upon failure of the company to complete the road in the

*Margin note:* 1. PUBLIC lands : construction of grant: railroads.

manner and time provided, yet the conditions and restrictions imposed by the act of Congress upon the State rested upon the railroad company. It took just such a title as the State held and received it burdened with the same conditions and none other. As we have seen, under the acts of Congress the State had power to sell the one hundred and twenty sections of land without any restrictions. The sale of the remainder of the land was restricted. This right and this title the State confirmed and granted to the railroad company. It received an absolute title to the one hundred and twenty sections, and the right to convey the same without restriction. Its title to the remainder of the land was conditional and its power to sell subject to the restrictions above stated." The question as to the power of the railroad company to dispose of the one hundred and twenty sections of land was directly involved in that case. If it had been held that no such power existed, the decision would necessarily have been the other way, because the land, being undisposed of by any proper authority, would have passed to the Cedar Rapids and Missouri River R. Company, the grantor of the defendant, under the subsequent legislation resuming the grant and conferring it upon that company. The Courtright case was appealed to the Supreme Court of the United States, the question therein involving the construction of certain acts of Congress, and the decision of this court was affirmed. 21 Wallace, 310.

II. Having found that the Air Line Railroad Company had the power and authority to sell the one hundred and twenty 2. CONVEY-   sections, of which the land in controversy was a ANCE: valid-   part, it only remains to be determined whether a ity of: trus-   tees.   sale thereof was actually made to those under whom the plaintiffs claim, before the act of redemption of March 17, 1860.

It appears in evidence that on the 15th day of March, 1858, the Iowa Central Air Line Railroad Co. executed a deed of trust of certain of the lands included in the grant to J.

Edgar Thompson, Gilbert H. Smith and N. W. Isbell. This deed is of great length, and is fully set out in the appellees' abstract. It is unnecessary to refer to it at length here. It is sufficient to say that the object of said trust deed was to secure the payment of the bonds and obligations of the company, which might be incurred in the construction of the road. On the 18th day of March, 1858, the said company executed another trust deed upon other lands of the grant to secure the capital stock issued by the company. On November 28, 1859, Thompson, Smith, and Isbell conveyed certain of the lands to M. K. Jessup, and on the same day Joseph P. Eaton, the successor of the said W. H. Gibbs, as trustee, conveyed certain of said trust lands to said Jessup. Afterward, in April, 1861, Jessup conveyed all of the lands which had been conveyed to him to J. Edgar Thompson, under whom the plaintiffs claim by conveyance and by will. The lands conveyed to Jessup, and which plaintiffs claim under him, were part of the one hundred and twenty sections which were selected in advance of building the road.

The Air Line Railroad Co. was largely indebted for grading and other expenditures, and there was a meeting of the creditors of the company with the directors thereof on the 18th day of November, 1859, at which meeting it was agreed the one hundred and twenty sections of land should be divided among the creditors. In pursuance of this arrangement certain bonds and land-scrip were issued in the name of Jessup for said Thompson and Smith, trustees, in payment of their services as such trustees, and upon the surrender of the bonds and scrip the conveyance of the land was made to Jessup for Thompson and Smith. Neither Jessup nor Thompson were present at that meeting; they were represented by Milton Courtright.

It may well be said that the evidence as to what services the trustees rendered, which entitled them to this compensation, is extremely meager and unsatisfactory. It is well established, however, that the bona fide indebtedness of the

company largely exceeded the value of the one hundred and twenty sections of land, being more than one million dollars, and it may be true that the stockholders of the corporation or its creditors could have, by an appropriate action, canceled the conveyance to Jessup as being fraudulent and without consideration. The conveyance, however, having been authorized by the board of directors, it invested Jessup and Thompson, his grantee, with the legal title to the land, and such title must stand, until set aside by some one holding an equitable right superior thereto. It is claimed that the conveyance by a trustee of the trust property to himself is void. It is voidable as against the *cestui que trust*, but valid as to all other persons. See *Small v. C., R. I. & P. R. Co.*, 55 Iowa, 582.

In our opinion the defendant is in no position to question the sale of that part of the land which the Air Line Company had the undoubted right to sell. The legal title to this land had passed from the railroad company to Jessup before the grant was resumed and conferred upon the defendant's grantors. As well might it have been permitted in the Courtright case to question the validity or amount of the claims which he held against the company as affecting his title to the lands conveyed to him. Besides, suppose it should be conceded that the defendant may avoid the sale for fraud, it must assume the burden of proof, because the conveyance, although made to Jessup by the trustees, for the benefit of the trustees, was an act done in pursuance of direct authority from the board of directors. What services were rendered by the trustees as the consideration for the land does not appear. Whether the claim was a mere sham, or a valid and just one, we are unable to determine from the evidence.

In our opinion the Circuit Court correctly determined that the plaintiffs were the owners of the land in controversy.

AFFIRMED.