F. S. DUNSHEE, Plaintiff and Appellee, v. THE STANDARD OIL COMPANY, Defendant and Appellant, and MILTON STORER, JOHN D. STEWART, LEE EDGINGTON, Defendants and Appellees.

**Principal and agent:** TORTS OF AGENT: EXEMPLARY DAMAGES: LIABILITY
1  OF PRINCIPAL. A principal is liable for the tortious act of his agent committed in the course of his duty and while acting within the scope of his employment, and when he has thus committed a wrong a joint action may be maintained against the principal and the agent; but a principal cannot be held for exemplary damages for the wanton act of the agent unless he participated in or ratified such act.

**Same:** CORPORATIONS: TORTS: EXEMPLARY DAMAGES. Where the evi-
2  dence tended to show that the agents of a corporation employed unlawful methods to destroy a competitor's business, with the knowledge and under the direction of its agents in charge thereof, for the purpose of increasing its business and controlling the field, the question of liability of the corporation for exemplary damages was for the jury.

**Same:** CONSPIRACY: MALICE: INSTRUCTION. Where several parties
 3  enter into an unlawful conspiracy to do a wrongful act there can be no degrees of liability, but all concerned are liable for the consequences. Thus where a suit against a corporation and its agents to recover damages for illegal acts resulting in unfair competition was brought and tried on the theory that the injury resulted from a conspiracy, or that defendants or some of them acted unlawfully, the element of good faith was necessarily excluded, and refusal of an instruction requiring a finding of malice against all defendants before there could be an allowance of exemplary damages was proper.

**Corporations:** LIABILITY FOR TORTS: JUDGMENT: EXCEPTIONS: REVIEW.
4  A corporation is only liable for malicious acts by imputing to it the wrongful acts of its agents; and where the agents are not found
VOL. 165 IA.—40

to have acted maliciously no malice can be imputed to the corporation as principal. But where the jury returned a verdict against the corporation itself, but exonerated its agent from liability from any malicious act, the correctness of which was not challenged by motion for judgment notwithstanding the verdict, or motion for new trial, and no instruction on the subject was asked, it became the duty of the court to enter judgment upon the verdict, and the error cannot be reviewed on appeal upon merely a general objection to the judgment.

Corporations: ASSIGNMENT OF CAUSE OF ACTION: COLLATERAL ATTACK: APPEAL: WAIVER OF ERROR. In an action on a claim by the assignee of a corporation the defendant cannot avail himself of the defense that the assignment was made at a special meeting of the directors of the corporation, by a bare majority of the board, the others not having been notified, whatever may have been the rights of creditors or stockholders of the corporation to question the validity of the assignment; and where this question was raised by requested instructions and assignments, though not argued on the appeal, it would not be considered on a subsequent appeal of the case.

Unlawful competition: "VOLUNTARY" SALE: INSTRUCTION. Where plaintiff alleged that defendant had destroyed its business by unfair competition, so that it was practically insolvent and was compelled to dispose of its remaining property to one of defendants at less than its value, and there was evidence tending to establish the claim, an instruction that if plaintiff *voluntarily* sold its property to defendant for an agreed price it could not recover damages for the loss, even if of greater value, was properly refused; as it ignored the circumstances under which the sale was consummated and in effect told the jury that the transaction could only be considered as one in the ordinary course of trade.

Exemplary damages: ASSIGNMENT: RECOVERY BY ASSIGNEE. A cause of action based upon tort and sounding in actual and exemplary damages is assignable; and the right to exemplary damages is not confined to the party wronged but may be recovered by his assignee.

Exclusion of evidence: LEADING QUESTIONS. The exclusion of evidence because of a leading and suggestive question is not erroneous, although the evidence might have been admitted without error.

*Appeal from Polk District Court.*—HON. LAWRENCE DE GRAFF, Judge.

Tuesday, April 14, 1914.

Action to recover damages based upon the charge of conspiracy and unfair trade. From a verdict and judgment against the Standard Oil Company, it appeals.—*Affirmed.*

*Carr, Carr & Evans,* and *Clinton L. Nourse,* for appellant Standard Oil Co.

*Dunshee & Haines,* for appellee Dunshee.

Withrow, J.—I. This action is brought by the assignee of the Crystal Oil Company to recover damages for injury to the business of the Crystal Oil Company in consequence of alleged wrongful and illegal acts resulting in unfair and unlawful competition. It is charged that the defendants the Standard Oil Company, Milton Storer, John D. Stewart, and Lee Edgington entered into an unlawful conspiracy for the purpose of doing the illegal acts which were pleaded, and that such conspiracy was fraudulently, maliciously, and unlawfully formed, and that, as a result of it, and the acts done thereunder, the Crystal Oil Company was driven out of business, and its business and property were because of it sacrificed and destroyed. Prayer was made for damages, actual and punitive. Issue was joined, there was a trial to a jury resulting in a verdict in favor of the plaintiff against the Standard Oil Company alone for $7,000, and no finding was made by the jury as to the other defendants. The trial court entered judgment on the verdict against the Standard Oil Company, and, construing the failure to find against the other defendants as, in effect, a finding in their favor, judgment was entered dismissing the petition as to each of said defendants, and awarding to them recovery of costs against the plaintiff. The Standard Oil Company appeals from the judgment against it. No appeal is taken from the judgment dismissing the petition as to the other defendants.

This case has once before been in this court (152 Iowa, 618), and the review of the testimony then made is in substantial accord with what is shown in the record on this appeal, varying, perhaps, in some features, but not to such an extent as to require that it should again be recited. In the former decision it was held that the evidence was such as to require the submission of the cause to the jury, and that a finding for plaintiff in actual and exemplary damages had support. The reversal of the case was because of a matter not going to the right of action and recovery, save as to the allowance of interest upon exemplary damages, and has no bearing upon the questions raised by this appeal.

II. Many errors are assigned. At the close of the evidence the defendants moved for a directed verdict, which was overruled, and such ruling is challenged as being incorrect. After the appeal and reversal of the case defendants filed an amendment to their answer, setting up new averments as to, the conduct of the Crystal Oil Company in the management of its business, not only in its relations to and methods with small dealers in oil, but also with the Standard Oil Company, and that by its actions the latter did nothing which was unfair in competition. The pleading itself but served as the basis of proof. It is now a sufficient answer to the claim of the appellant in this regard that, under the holding on the former appeal, the evidence was such as to require the submission of the cause to the jury. And that liability arises under such a state of facts as the evidence tends to show. See *Boggs v. Duncan Schell Company*, 143 Iowa, 481.

III. It is claimed that there was error in the refusal by the trial court to give to the jury instructions Nos. 14 and 15 requested by the appellant. Instruction No. 14 was to the effect that no evidence had been offered showing or tending to show that the defendant the Standard Oil Company ever authorized the doing of any malicious or wanton act, or that it ever ratified such, if it was found that such was committed by the other defendants, and that, if the jury, under such

state of facts, found the plaintiff entitled to recover of the Standard Oil Company some sum as actual damages, there could not be any allowance of exemplary damages. The fifteenth instruction as requested was to the effect that, if the jury found that any one of the defendants did not act maliciously in the transactions complained of, exemplary damages could not, under such a finding, be allowed against any of the defendants. We can properly consider the questions raised by these instructions with other questions arising out of the verdict.

Storer was the manager of the Des Moines branch of the Standard Oil Company at the time the acts were committed which are the basis of the claim in suit. Stewart was the city salesman, and Edgington was in charge of the retail department. All, therefore, were agents of the Standard Oil Company, and it does not appear from the evidence that what was done, and which serves as the basis of the complaint, was by the direction of any other person or persons than the agents named. Whatever acts were committed resulting in injury to plaintiff's assignor were the acts of the agents named, and only by imputing to the principal the malice of the agents, in acts done within the scope of their employment, can punitive liability of the principal arise.

The verdict of the jury was against the Standard Oil Company alone. No special findings were returned indicating the amount allowed as actual damages, nor the amount, if any, allowed as exemplary damages, both of which were permitted under the instructions of the court. The failure by the jury to return a verdict, in terms, for or against the other defendants was treated by the trial court as a finding for them, and judgment was entered accordingly, from which no appeal has been taken. For the purpose of this case, then, such must be taken as an adjudication that said defendants were guilty of no acts which could serve as the basis of an award of damages against them, either actual or exemplary. It must then be determined what effect such an

adjudication has upon the liability of the principal, against whom judgment was entered.

That the master is liable for the consequences of a tort committed by the servant in the course of his duty, and while acting within the scope of his employment, is a rule established by many authorities. *Moore v. Fitchburg Ry.*, 4 Gray (Mass.) 465 (64 Am. Dec. 83); *Ramsden v. Boston R. R. Co.*, 104 Mass. 117 (6 Am. Rep. 200); *Bass v. Chicago Ry. Co.*, 36 Wis. 463 (17 Am. Rep. 495). And when a tort has been committed by an agent within the line of his employment, a joint action may be maintained against the principal and the agent. *Hewitt v. Swift*, 3 Allen (Mass.) 422; *St. Louis, etc., R. R. Co. v. Dalby*, 19 Ill. 374. But the principal cannot be held liable in exemplary damages for the wanton acts of the agent, unless it participated, either expressly or impliedly, or by conduct authorizing or approving the act, either before or after it was committed. *Lightner Mining Co. v. Lane*, 161 Cal. 689 (120 Pac. 771, Ann Cas. 1913C, 1093); *Lake Shore & M. S. Ry. v. Prentice*, 147 U. S. 101 (13 Sup. Ct. 261, 37 L. Ed. 97); *Haver v. Railroad Co.*, 64 N. J. Law, 312 (45 Atl. 593); *Fohrmann v. Traction Co.*, 63 N. J. Law, 391 (43 Atl. 892); *Wells v. Railroad Co.*, 82 Vt. 108 (71 Atl. 1103, 137 Am. St. Rep. 987).

1. PRINCIPAL AND AGENT: torts of agent: exemplary damages: liability of principal.

Recognizing that a corporation is impersonal, that it can act only through its agents, in the application of the foregoing rules there arises the question, in its relation to exemplary damages, as to where one must look as to the source of authority for the performance of the acts charged as a malicious tort. When it appears, as here, giving to the evidence the effect that it tends to show, and from which the jury alone should determine the fact, that the methods employed were with the knowledge of and under the general direction of the agents who were the representatives of their principal and in charge of its business, and that which was done being

2. SAME: corporations: torts: exemplary damages.

for the sole purpose of increasing its business, and more nearly controlling the field, we think there was presented such a state of facts as warranted submitting to the jury the question of liability not only for actual but exemplary damages.

As a result of that submission, there was returned the verdict which, as construed by the trial court, in effect exonerated the agents of all liability and wrong; and this fact presents the question raised by requested instruction No. 15, which in effect required a finding of malice against all defendants before exemplary damages could be allowed against any of them.

3. SAME: con-
spiracy; mal-
ice: instruc-
tion.

In *Moore v. Duke*, 84 Vt. 401 (80 Atl. 194), cited by appellant, an action for trespass, it is stated that in cases based on tort, if more than one is made defendant, all must be shown to have been moved by a wanton desire to injure, citing *Boutwell v. Marr*, 71 Vt. 1 (42 Atl. 607, 43 L. R. A. 803, 76 Am. St. Rep. 746). In the discussion of the question in *Moore's* case, *supra*, that court said:

But since exemplary damages are predicated upon the animus of the one against whom they are claimed, it may happen, when two or more are defendants, that some are liable for exemplary damages and others only for compensatory. Some may be acting in good faith, while others . . . maliciously. In such cases, while all are liable for the full amount of the actual injury which the plaintiff has suffered from the joint tort, . . . exemplary damages are to be assessed according to the guilt of the most innocent of the defendants. And if any of these was acting in good faith, and so not liable for punitive damages, none can be awarded in the suit.

Supporting such rule, that court cites *Fohrmann v. Cons. Trac. Co.*, 63 N. J. Law, 391 (43 Atl. 892); *Haver v. Railway Co.*, 64 N. J. Law, 312 (45 Atl. 593). The reason for the rule is that, where a cause of action against defendants

jointly sued for a malicious tort is submitted to the jury, but one verdict will be returned, if liability is established. That verdict will represent the finding of the jury as to the plaintiff's right of recovery on the whole case. It is manifest that, if one or more defendants are guiltless of malice, a verdict holding them for exemplary damages will be unjust, in that it fixes upon them a liability which they have not incurred. But when defendants are charged as joint tort-feasors, by reason of a conspiracy or common unlawful purpose, we think a different rule must govern.

This case was brought and tried upon the theory that the damages for which claim was made resulted from a conspiracy, or that the defendants, or some of them, committed unlawful acts resulting in injury. In the third instruction given by the trial court this language appears: ''However, if you fail to find, under the facts and circumstances of this case, that there was a conspiracy as claimed by plaintiff, then each defendant is liable only for such acts, if any, as you find he has done or authorized to be done.'' A fair construction of this language is that, if a conspiracy was shown, all who were concerned in it would be liable for its results; if not established, that the liability for unlawful acts could only be charged against the defendants who did or authorized them. In subsequent instructions the trial court stated the rule that actual damages could be recovered against the defendant or defendants by or through whose wrongful acts the damages were caused. In a following instruction the jury was told that, if actual damages were found, and that they were caused by willful and malicious acts as charged, then exemplary damages could be allowed to punish the defendants guilty of the malicious and wrongful acts. The idea which runs through the instructions, and which has expression in those from which we have quoted, is that, if several persons enter into an unlawful enterprise or a conspiracy to commit an unlawful act, each one concerned in and participating in it will be chargeable with the malice which prompted it. This rule is stated

in *Young v. Gormley,* 119 Iowa, 547; *Reizenstein v. Clark,* 104 Iowa, 287; *Burns v. Campbell,* 71 Ala. 271; *Nightingale v. Scannell,* 18 Cal. 315, 13 Cyc. 116.

We think there is a clear distinction between the rule thus stated and that announced in *Moore v. Duke, supra,* in that, where a conspiracy or common unlawful purpose is shown, there can be as among the participants no degrees of liability, but all who are actually concerned in the unlawful purpose are liable for its consequences; while in the *Moore* case, as a reason for the rule, it is stated that in an action for trespass, such as was then under consideration, some may be acting in good faith and others maliciously. This case being based upon one or the other of two theories, either of which because of the nature of the charge necessarily excludes the element of good faith, it was not error to refuse to instruct as requested in instruction No. 15.

IV. As we have earlier noted, the verdict of the jury, as construed by the trial court in its entry of judgment, exonerated the agents of the appellant from liability, in effect finding that they, nor none of them, had been guilty of malicious or wrongful acts warranting a recovery against them. It is contended by the appellant that under such a record it was error on the part of the trial court to enter judgment against the appellant, for the reason that its liability could only arise from the wrongful acts of its agents as charged, there being no evidence to connect it with the acts charged other than through its agents who were named; and that being liable only for imputed wrong, if the finding of the jury relieved the only persons through or from whose acts the imputation of wrong on its part could arise, such would necessarily relieve it. This court has held that a corporation can only be held liable for a malicious act by imputing to it the wrong of its agent, and, if the agent be found not to have acted maliciously, there is no malice to impute to the corporation principal. *White v. Text-Book Co.,* 150 Iowa, 31. The

4. CORPORATIONS: liability for torts: judgment: exceptions: review.

rule also has the support of many authorities of other states. *McGinnis v. C., R. I. & P. Ry.*, 200 Mo. 347 (98 S. W. 590, 9 L. R. A. [N. S.] 880, 118 Am. St. Rep. 661, 9 Ann. Cas. 656); *Indiana Company v. Glass Co.*, 165 Ind. 361 (75 N. E. 649).

But a careful examination of the record fails to show that the question now raised was ever presented to the trial court. Following the return of the verdict, and in the discharge of its formal and required duty, judgment was entered by the court in accordance with the finding of the jury against the appellant, as definitely named, and in favor of the other defendants. The right to enter the judgment was in no way challenged by the appellant, either by motion for judgment notwithstanding the verdict or for a new trial. All that is shown is that after the entry of judgment "all parties duly excepted." But the entry of the judgment upon the records of the court is but the formal action of the clerk, under code, section 3784. We think the exception then made cannot serve to protect the litigant as against alleged errors previously committed; but to save their rights they must have proceeded in a timely way. The right to recover against the appellant, in the event of a failure to find the other defendants, its agents, liable, was presented in no instruction offered by the appellant, and there is in the record nothing to indicate that the attention of the trial court was ever called to the question. Had the matter been presented to the trial court after the verdict, by proper motion the appellant would thereby have avoided the rule of code, section 4105, which states "that a judgment or order shall not be reversed for an error which can be corrected on motion in an inferior court, until such motion has been there made and overruled." Having failed to so move, the penalty for which is not canceled by the saving of a general exception upon the entry of judgment, the error cannot be urged on appeal. *Riley v. Bell*, 120 Iowa, 618; *Ketchum v. Larkin*, 88 Iowa, 215; *Garvin v. Cannon*, 53 Iowa, 716.

V. It appears that an assignment and sale of the prop-

erty of the Crystal Oil Company was made to Clinton L.
Nourse in 1899, under which, after specifically describing the
various items, and expressly excluding there-
from the accounts and bills receivable due the
Crystal Oil Company, in comprehensive terms
after the particular description the bill of
sale stated, "the intention being hereby to convey to the said
Clinton L. Nourse all of the property of whatever name or
nature of the Crystal Oil Company, except its book accounts
and bills receivable." The record shows that plaintiff, the
appellee, as trustee, took from the Crystal Oil Company an
assignment of its claim against the appellant and its code-
fendants, under which he was, in consideration of his services
in prosecuting this suit, to receive one-half of the recovery.
It is now claimed that under the alleged assignment to Dun-
shee no rights passed, for that it was not authorized at a reg-
ular meeting of the board of directors, but at a special meet-
ing at which only a bare majority of the board were present;
the other directors not having had notice of the meeting.
Upon this and collateral questions of ownership of the claim
growing out of the facts, we find it unnecessary to give con-
sideration upon their merits, although it is proper to say that
the question as to the right to appellee to maintain the suit
was not directly raised by the pleadings, excepting by general
denial. Nor was this a defense which could be urged by the
appellant. Whatever may have been the rights of creditors
or stockholders in this corporation to question the validity of
the assignment, it covered a claimed right of action, and as to
all other parties vested in the holder the right to sue. *Small
v. C., R. I. & P. Ry.,* 55 Iowa, 582; *Miller v. Iowa Land Co.,*
56 Iowa, 374; *Carpenter v. M. W. A.,* 142 Iowa, 411.

But the questions now raised on this branch of the case
were urged on the first trial by offered instruction, and in
other ways. The trial court then held against the contention
of the appellant, and instructed the jury that the plaintiff
was entitled to maintain the action. These facts clearly ap-

5. CORPORATIONS:
assignment of
cause of action:
collateral at-
tack: appeal:
waiver of error.

pear from the record in the first appeal, which is before us. On that appeal, while the question now raised was included in the assignment of errors, it was not argued nor insisted upon. Under such conditions we hold that the appellant has not now the right to be heard upon these questions, as it was its duty to urge them on the former appeal. *Hensley v. Davidson Bros.,* 143 Iowa, 742; *Zalesky v. Home Ins. Co.,* 114 Iowa, 516.

VI. Instruction No. 4 requested by the appellant, and which was refused, was to the effect that "the evidence shows, without dispute, that the Crystal Oil Company voluntarily sold its horses, wagons, and other property for the sum of $2,100, and you are therefore instructed that the plaintiff cannot recover any damages for loss upon or for said property, even though you should find from the evidence that its value was greater than $2,100." Instruction No. 5 requested by the appellant was based upon the same thought, referring to this claim in the evidence that the value of the property sold for $2,100 was approximately $17,000, and stated that "there was no evidence in the record which would warrant the jury in allowing damages upon the claim that the Crystal Oil Company was compelled to sell its assets for less than they were worth." Both of the requested instructions were refused, and error is assigned on that ground.

6. UNLAWFUL COMPETITION: voluntary sale: instruction.

The charge in the petition as to this branch of the case was that in pursuance of the conspiracy, as alleged, the defendants harassed the Crystal Oil Company until its losses had become so great, and its business reduced and damaged to such an extent, that it was brought near insolvency, and was compelled by reason of the malicious and wrongful acts charged to sell the property it had on hand at a great sacrifice, to wit: Property of the value of $15,000 for $2,100.

There was in the record evidence tending to establish this claim, although included in the total value thus fixed was the item of good will; and the evidence also shows, and it is

conceded, that the sale was made to a representative of the appellant, and for its benefit. The evidence also tended to show that some of the property thus sold consisted of horses, harness, and equipment which have a general market value, and of wagons, tanks, sheds, etc., fitted for the oil business, and that the value of such articles exceeded the amount received under the contract of sale.

The basis of instruction No. 4 as requested is that, if one voluntarily sells property for less than its value in the open market, a cause of action does not arise for the difference between the selling price and fair value against one by whose wrong the sale was caused to be made. The offered instruction necessarily presumes as a basis for the rule it stated that the transaction resulting in the sale was voluntarily entered into by the Crystal Oil Company. "Voluntarily," as defined by Webster's International Dictionary, is "proceeding from the will; produced in or by an act of choice; unconstrained by another's interference; spontaneous; acting of one's self; free." And as technically used in the law it has been defined by the same authority as "acting of one's free will, without valuable consideration; acting or done without any present legal obligation to do the thing done, or any such obligation that can accrue from the existing state of affairs." This latter definition is recognized as correct in holding that a voluntary conveyance is made without any substantial consideration. *Trumbell v. Hewitt,* 62 Conn. 448 (26 Atl. 350); *Knight v. Kidder* (Me.) 1 Atl. 142; *Kimball v. Fenner,* 12 N. H. 248. "Voluntarily," as applied to personal action, is held to mean of one's free will, without being moved, influenced, or impelled by others. *Kearney v. Fitzgerald,* 43 Iowa, 586; *Hardin v. Hardin,* 17 Ala. 250 (52 Am. Dec. 170); *Gates v. Hester,* 81 Ala. 357 (1 South. 848).

We think that, in the light of the theory upon which this case was tried, and which had support in the evidence, the effect of the offered instruction would have been to tell the jury that the sale by the Crystal Oil Company was unaffected

by any act of the appellant, and could only be considered as a transaction in the ordinary course of trade or dealing. It left out of proper consideration the circumstances under which the sale was made, the claimed condition of financial desperation on the part of the Crystal Oil Company, the offer to purchase the property by the appellant at the end of a successful campaign in which it was victor and its rival vanquished, the requirement on the part of the offering purchaser being that for its offer there must be a conveyance of all the property of the Crystal Oil Company, and the action of the board of directors of that company, which, as expressed by one of them, was that ''we concluded to throw up the sponge, and sell out to the Standard Oil Company,'' all of which we think were proper as bearing upon the question as to whether the sale was voluntarily made. Under such conditions it could not be said that the Crystal Oil Company was necessarily driven to the open market to sell its property.

More than this, when we consider that judgment could only have been entered against the appellant upon proof of its wrongful act through its agents, and when, as a result of such act, it secures by purchase the property of its rival at a price alleged to be much less than its real value, and benefits of the purchase accruing solely to it, and under the claims of plaintiff, to which it was not lawfully entitled, complaint cannot properly be made that the benefits thus wrongfully secured cannot be the basis of a claim against it. There was no error in refusing to give offered instruction No. 4. The conclusion we have reached as to this instruction applies to and governs instruction No. 5 requested by the appellant.

VII. Instruction No. 11 given by the trial court is complained of for the reason that it told the jury that, if plaintiff was entitled to recover, he should be allowed his actual damages, not exceeding $15,000, to make good the financial loss of the Crystal Oil Company suffered as a result of the wrongful acts of the defendants. The particular criticism is that it nowhere precluded the jury from allowing as damages

the amount which they might find the property covered by the bill of sale exceeded in value the amount paid for it. We have held above that that was not necessarily the rule which should govern the case in its submission to the jury, and, while the trial court might properly in more detail have stated the proper measure of damages, the offered instructions gave to it no assistance upon that question. It should also be stated that the instruction as given was substantially the same as that given in the third division of instruction No. 8 upon the former trial of the case, and which had application to evidence then in the record substantially the same as now appears upon the question now presented. There was no error of which complaint may now be made in giving instruction No. 11.

VIII. Error is urged against an instruction which, under certain conditions, allowed the recovery of exemplary damages, and for the refusal of a requested instruction that the assignee of the Crystal Oil Company was not entitled to recover such damages. The particular point is that damages of that nature, being by way of punishment only, are peculiarly the right of the one against whom the wrong was committed, and cannot be assigned.

7. EXEMPLARY DAMAGES: assignment: recovery by assignee.

The general rule governing the right of assignment of causes of action arising out of tort is stated, in 4 Cyc. 23, to be that the test most generally applied is that, if the right of action arising from the act is in its nature such that it will, upon the death of the party aggrieved, survive to his personal representatives, it is assignable. Code, section 3443, provides that all causes of action survive, and may be brought by the personal representative. We think it follows that an action based upon tort sounding in actual and exemplary damages is a proper subject of assignment, and the right of the assignee in this case to recover was expressly recognized on the former appeal. See, also, *Union Mill Co. v. Prenzler,* 100 Iowa, 540.

IX. Error is urged in the sustaining of objections to questions propounded on cross-examination by the appellant of A. L. Clinite, manager of the Crystal Oil Company. The questions were as to whether he had talked to his drivers about the red cards displayed by customers of the Standard Oil Company, and the conduct of his drivers towards the customers of the rival company. While the evidence would no doubt have been competent as defensive matter, and as bearing upon the question of unfair competition, and also the question of malice, under the record before us we think the trial court did not err in excluding it as not being cross-examination.

X. Evidence was offered and introduced on the part of the appellant to the effect that it was compelled to meet active competition with the gas and electric companies, and

8. EXCLUSION OF EVIDENCE: leading questions.

that the electric people were more active than the gas company. A witness testifying upon this subject was asked as to the activities of the gas company in laying mains, and pushing its business into new territory, and over a greater territory than it had before occupied. The question was objected to as incompetent, immaterial, leading, and suggestive, and an answer was not permitted. This is claimed as error. We think the question as propounded came well within the objection, as being leading and suggestive, and, while it might, without error, have been permitted to be answered, its exclusion was not error.

The judgment of the trial court is—*Affirmed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.