CASE 37.—ACTION BY BETTIE ELLIOTT AGAINST THE
WESTERN UNION TELEGRAPH CO., FOR DAM-
AGES FOR DELAY IN DELIVERING A DEATH
TELEGRAM.—January 15.

# Western Union Telegraph Co. v. Elliott

Appeal from Kenton· Circuit Court.

W. McD. SHAW, Circuit Judge.

Judgment .for plaintiff.    Defendant appeals.—Re-
versed.

1. Telegraphs and Telephones—Delivery of Message—Diligence
   Required.—Where a telegraph company received a message
   addressed to a person in care of the city directory at a.
   certain city, it had a right to suppose that the sender knew
   how the addressee could be found, and it obligated itself
   only to use all reasonable diligence to deliver the message
   at the address where the city directory would show she
   lived, and did not contract to deliver it at all hazards.
2. Reasonable Diligence—Evidence.—Evidence held to show that
   a telegraph company used all reasonable diligence in its effort.
   to deliver a message.
3. Failure to Deliver Message—Taking Case from Jury—Direction
   of Verdict.—In an action against a telegraph company for
   failure to deliver a message, where defendant showed that.
   it used all reasonable diligence to make delivery, the pre-
   sumption of its negligence because of nondelivery was over-
   come, and, plaintiff failing to rebut the evidence of diligence,.
   defendant was entitled to a directed verdict in its favor.

RICHARD & RONALD, GEO. H. FEARONS and S. D. ROUSE
for appellant.

JOHN L. RICH and ). S. WARE for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

On the 16th of February, 1904, William Starks, of Winfield, W. Va., delivered to the agent of the Western Union Telegraph Company, at Winfield, the following message: "Mrs. Bettie Elliott, Care City Directory, Covington, Ky. Come. Father murdered. Funeral eighteenth. Wm. Starks"—and paid the necessary charges for forwarding same to its destination. The message was received in Covington at six minutes after 3 o'clock on the same day. An examination of the city directory showed that the name of Bettie Elliott did not appear therein, although the name of Elliott did appear 24 times in the directory. The message was given to a boy. He went to a party named Elliott on Third street, to another on Fourth street, to another on Eleventh street, and at each of these Elliott homes he was informed that the message was not for them, and that they know of no "Bettie Elliott." He then inquired at a coal office, near the home office of the telegraph company, if they knew of any Bettie Elliott, and, being informed that they did not, he went to the post office and inquired of a letter carrier and a clerk in the post office, and was told by each that they knew of no Bettie Elliott in Covington. These facts being reported to the manager in charge of the local office, he undertook to deliver the message, and inquired at several stores and groceries in the neighborhood of his office to know if any one knew Bettie Elliott, or where she lived. Being unsuccessful in the prosecution of his search, at 6 o'clock in the evening of the same day he addressed a postal card to Bettie Elliott and placed the same in the post

office for delivery. On this card he notified her that his company had a message for her at their office, which they were unable to deliver because they could not learn of her address, and asked her to call and receive same. The postal authorities were unable to deliver this post card, and stamped across its face "Not in City Directory." Thereafter a message was forwarded to the sender of the telegram at Winfield, W. Va., notifying him that the company had not been able to deliver the message. No answer was received to this message. Some eight or ten days thereafter plaintiff learned through a newspaper clipping that her father had been murdered. She went to the post office and inquired for mail, when the post card, above referred to, was delivered to her. She then called at the telegraph office and received the telegram. She sued for damages. Upon a trial of the case plaintiff testified that she was the wife of one Robert Elliott, who lived at 1237 Holman street, Covington, Ky., and that they had lived there about two years; that her name did not appear in the city directory. The only conflict between the testimony offered by appellant and that offered by appellee was a statement which J. J. Grant, an employe of the company, testified plaintiff made to him, to-wit, that she had not heard from her people in seven years. This plaintiff denied. On this testimony the case was, under proper instructions, submitted to the jury, and they returned a verdict of $200 in favor of plaintiff. At the conclusion of plaintiffs evidence the defendant asked for a peremptory instruction, and this motion was renewed at the conclusion of all of the evidence. Both motions were overruled. Because of this ruling of the trial court the defendant company complains, and prosecutes this appeal.

It is admitted that, if the case should have gone to the jury, the verdict should not be disturbed. Plaintiff, by her own testimony, and other evidence introduced by her, established the fact that she lived in Covington, Ky., and that the message was not received by her until she called for it at the office of the company some eight or ten days after it had been sent to her. She admitted that her name was not in the city directory. On this evidence the company asked for a peremptory instruction, and, in overruling same, we are of opinion that the trial court did not err. There was nothing in this evidence to show that the defendant company had made any effort whatever to deliver this message, and in the absence of such showing the court should not have taken the case from the jury; but when defendant had introduced its evidence an entirely different case was presented. It had delivered this message to one of its messenger boys, with directions that he endeavor to find Bettie Elliott. His testimony shows that he went to four different homes wherein the directory stated Elliotts lived, and made inquiry at each for Bettie Elliott. In each instance he was told that she did not live there, and they knew of no such person. He then inquired of a coal merchant, and, while it is said for appellee that this was of a merchant doing business in a place immediately next to that where the office of appellant company was located, still it was of a company which, from the very nature and character of its business, came into contact with a great many people, and this is especially true at this time of the year. Failing to learn of her whereabouts through those in charge of the coal company's office, he then went to the post office, and made inquiry of a carrier and a clerk there, and, meeting with no bet-

ter success, returned to the local office with the message. Thereupon the. manager in charge undertook to deliver the message and made inquiry at several business houses, but was unable to find any one who knew Bettie Elliott or the place of her residence. He thereupon deposited a post card in the office, directed to her, as above indicated. Appellant insists that, when it made an effort to the extent above indicated to deliver this message, it had more than complied with its contract, and it should be absolved from all liability for its failure to deliver the message. On the other hand, it is the theory of appellee, and her counsel earnestly contend, that when the company received the message and the pay for its transmission it could have relieved itself from liability only by exhausting every means to see that it was delivered to the person indicated and that within a reasonable time; that instead of going to but four Elliott homes, and those nearest the office of the company, it should have gone to the home of every Elliott in Covington; that they were but 24 in number, and that it should be held answerable because it failed to go to all; that, had it done so, the message would have been delivered, and plaintiff not denied an opportunity to attend her father's funeral.

In the case of Cumberland Telephone & Telegraph Company v. Atherton, 122 Ky. 154, 28 Ky. Law Rep. 1100, 91 S. W. 257, this court, when having under consideration a somewhat similar question, held: "Telegraph and telephone companies cannot know the residence of all persons for whom they accept messages. Unless they in fact know, and accept and undertake to deliver the message, although the addressee is not within a reasonable free delivery limit of the receiving office, the implication is that the

parties undertook that the sender represented the addressee to be at the point to which the message was addressed and that the company undertook to use all reasonable diligence and dispatch to find the addressee at that point and deliver the message there.'' In the rule thus announced we find the principle which governs the case at bar. When the appellant company received the message at Winfield, W. Va., it obligated itself to use all reasonable means and diligence to deliver it to the addressee at the address at which the directory in the city of Covington would show she lived. When the company found her name was not in the City Directory, it was in the same position as though a street address had been given in the message calling for a vacant lot or an unoccupied house. In such a case it would have been the duty of the appellant company to make inquiry in that neighborhood or at the homes nearest the street address given in the message. If such efforts on the part of the company failed to discover the residence of the addressee, it could not be said that the company had failed to exercise all reasonable diligence to discover her address. In the case at bar the company had a right to suppose that the sender of the message knew where the addressee would be found, and when it accepted the message it did not obligate itself to deliver it at all hazards, but only to use all reasonable diligence to deliver it to the addressee at the place where the Directory showed she lived. The Directory failing to furnish any assistance, inasmuch as her name was not contained therein, appellant, not knowing her residence, was thrown upon its own resources to discover same, if it could, by the exercise of reasonable diligence.

We are of opinion that appellant was not called

upon, nor required, in the exercise of reasonable diligence, to go to the extent which appellee insists it should have in order to relieve itself of liability; for, while it so happened that there were but 24 Elliotts in Covington, a case might be presented where there might be 400, and if, in order to absolve itself from liability, the company would have to visit each of the 24, it would likewise have to visit each of the 400. To enforce such a rule would be requiring of the company that it used all possible diligence to deliver the message, whereas the law only imposes upon it the necessity of using all reasonable diligence —to use that diligence which a reasonably prudent man would have used under like or similar circumstances. We are of opinion that when the homes of as many as four Elliotts were visited, and merchants and grocers and business men were inquired of, and the advice of letter carriers and postal authorities was sought, without success, the appellant company had used all diligence that might be reasonably expected or required of it to deliver this message, and had fully met the requirements of the law. That the postal authorities, with all of their machinery for discovering the presence and location of persons living in a city, failed to discover the residence of the addressee in order that they might deliver the postal card to her, is a circumstance tending strongly to show that the addressee was a person but little known in the city of Covington, which would of itself render the discovery of her residence difficult.

When defendant had shown by its evidence that it used all reasonable diligence to deliver the message, and only failed to do so because it was not furnished and could not, by the exercise of reasonable care, discover the residence of the addressee, the

presumption of negligence was overcome, and, as plaintiff was unable to rebut this evidence, the trial judge should have sustained the motion for a peremptory instruction at the close of the testimony.

For his failure so to do the judgment is reversed, and cause remanded for further proceedings consistent herewith.