CASE 82.—ACTION BY J. M. MAXBERRY AGAINST THE CUMBERLAND TELEPHONE & . TELEGRAPH CO. FOR FAILURE TO DELIVER DEATH MESSAGE.— Oct. 1, 1909.

## Cumberland Tel. & Tel. Co. v. Maxberry

Appeal from Carlisle Circuit Court.

R. J. Bugg, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Telegraphs and Telephones—Failure to Deliver Death Message —Complaint—Sufficiency.—Where, in an action against a telephone company for failing to deliver to plaintiff a message announcing his sister's death, and calling him to the phone for the purpose of notifying him of the time of the burial, defendant did not stand on a demurrer, but joined issue on the facts alleged in the petition, the petition was not defective for failing to charge that plaintiff, on receiving the message, would have come to the phone, and that he or the sender would have paid the costs of the message.

Cumberland Tel. & Tel. Co. v. Maxberry.

2. Champerty and Maintenance—Contracts.—Ky. St. 1909, Sec. 209, provides that all contracts made in consideration of services to be rendered in the prosecution, or in aid of the prosecution, of any suit, by any person not a party on record in such suit, whereby the thing sued for, or any part thereof, is to be received by such person for his services or assistance, shall be void.    Section 216 provides that neither party to such contract shall have any right of action thereon.  Held, that the statute only renders void the champertous agreement, and not the cause of action, and hence that plaintiff agreed with one not his attorney to divide the proceeds of any judgment against defendant did not deprive plaintiff of his cause of action.

3. Telegraphs and Telephones—Delivery of Messages—Beyond Ordinary Limits—Care Required.—That a telegraph or telephone company accepts a message for delivery beyond its ordinary delivery limits, and exacts a fee in advance, does not impose on the company any greater diligence than is required in the case of a message directed to one within the delivery limits; the company's full duty being performed when it uses all reasonable diligence or ordinary care to deliver the message within a reasonable time.

4. Telegraphs and Telephones—Delivery of Message—Care Required of Company—Instructions—Form.—In an action against a telephone company for failing to deliver a message, form of instruction as to care required of defendant prescribed.

5. Telegraphs and Telephones—Delivery of Message—Duty of Company—Instructions—Form.—In an action against a telephone company for failing to deliver a message, form of instruction as to duty of defendant to deliver the message under the contract prescribed.

J. E. KANE for appellant.

SHELBOURNE & SMITH for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

Appellee, J. M. Maxberry, instituted this action in the Carlisle Circuit Court against appellant, Cumberland Telephone & Telegraph Company," to recover damages for the failure of the latter to deliver

to him a message announcing the death of his sister, and calling him to the phone for the purpose of notifying him of the time of the burial. Maxberry claims that he was thereby deprived of the opportunity of viewing his sister's remains and attending the funeral. He asked damages in the sum of $1,000. Upon the trial of the case the jury returned a verdict in his favor for the sum of $250. From that judgment based thereon the Cumberland Telephone & Telegraph Company appeals.

The facts are as follows: J. M. Maxberry, who formerly lived in Ballard county, Ky., with his brothers and sisters, went to Muhlenberg county several years ago, and located about five miles from the little town of Bolton, where he resided at the time his cause of action arose. Maxberry had an invalid sister, who resided with her brother-in-law, N. T. Denton, in Carlisle county, Ky. Some time in March 1908, he visited this sister, who, at the time was in a very low state of health. Before leaving for his home in Muhlenberg county he arranged with Denton to telephone him at once in the event of the serious illness or death of his sister.

On the evening of the 7th of June, 1908, his sister, who at the time was at a health resort in Illinois, was taken suddenly ill, and died on the morning of the 8th of June, about 8 o'clock. N. T. Denton got into communication with appellant's operator in Bolton, and told her that Maxberry' sister was dead, and he wanted Maxberry to come to the phone. According to the testimony for appellee, the operator agreed, on behalf of the company, to deliver the message to appellee and call him to the phone if Denton would pay the cost of delivery, amounting to $1.50. Maxberry was at his home on the 8th day of June, and

the message was not delivered to him for several days. If he had received the message he would, and could have reached the place of the funeral in time to view his sister's remains and attend the funeral. The sender of the message was informed that Maxberry was on his way to the phone. The evidence for appellant is to the effect that the operator did not know where appellee lived. Denton asked that the operator inquire of the people around there. This was done, and the operator informed Denton that appellee was in the tie woods at a point about three miles from Bolton. There was a liveryman in the town, who agreed to go to the tie woods for the sum of $1.50. When this sum was paid by the sender of the message the operator procured the liveryman to take the message. The liveryman did not agree to go anywhere else except to the tie woods. He went to the tie woods, and spent about an hour and a half there looking for appellee, but could not find him. He then delivered the message to a man who worked in the tie woods, who subsequently informed appellee's son that his father's sister was dead, and that his father was wanted at the phone. The evidence also shows that this boy was crippled in one of his feet, and unable to reach his father's house, which was some three miles away.

It is first insisted that the petition is fatally defective because it does not charge that appellee upon receiving the message would have come to the phone, and that the sender of appellee would have paid the costs of the message.

In the first place, appellant did not stand on the demurrer, but joined issue on the facts alleged in the petition. Moreover, we regard this objection as highly technical, for the reason that the evident pur-

pose of the sender of the message was to acquaint appellee with his sister's death.

During the progress of the case it developed that appellee and N. T. Benton had agreed to divide the proceeds of any judgment that might be obtained against appellant. It is insisted by appellant that this agreement was void, and deprived appellee of his right of action against it. It is true the contract so made is void under section 209, Ky. St. Neither party had any right of action predicated upon the contract so made. By the terms of the statute the champertous agreement itself is rendered null and void—not the cause of action, which was the subject of the champertous agreement. This question was before this court in the case of Wehmhoff, etc. v. Rutherford, 98 Ky. 91, 32 S. W. 288, 17 Ky. Law Rep. 659. There the court said:

"Under section 2, c. 11, Gen. St. (section 209, Ky. St.), all contracts made in consideration of services to be rendered in the prosecution, or in aid of the prosecution, in or out of court, of any suit, whereby the thing sued for or in controversy is to be received by such person for his services or assistance, shall be null and void. Section 8, c. 11, Gen. St. (section 216, Ky. St.), provides 'that neither party to any contract made in violation of the provisions of this chapter shall have any right of action or suit thereon.' This does not mean that when a party has a cause of action existing at the time he makes the champertous contract, he shall forfeit his right to recover thereon, but that neither he nor the champertor shall have any right of action or suit on the contract made in violation of the statute for the prosecution of the cause of action then existing. In other words, the statute does not cause the creditor who

enters into a champertous contract to forfeit to his debtor the debt which was the subject of the champertous agreement. The statute does not declare the cause of action which was the subject of the champertous agreement null and void, but declares the champertous agreement null and void. A champertous contract (other than one relating to real estate) for the prosecution of a cause of action is no defense, and the champerty can only be set up by a party thereto when the champertous agreement is sought to be enforced. Burnes v. Scott, 117 U. S. 588, 6 Sup. Ct. 865, 29 L. Ed. 991; Robison v. Beall, 26 Ga. 27; .Small v. C., R. I. & P. R. Co., 55 Iowa, 582, 8 N. W. 437; Pennsylvania Co. v. Lombardo, 49 Ohio St. 1, 29 N. E. 573, 14 L. R. A. 785. However, should a creditor transfer his cause of action to an attorney, or other person, under an agreement that the suit should be prosecuted in the name of the attorney, or such other person, and for thus prosecuting the suit the attorney or such person was to have a part thereof for such services, then it would be available as a defense, because it would be an action the direct effect of which would be the enforcement of the champertous agreement."

We, therefore, conclude that the agreement between appellee and Denton presented no defense to this action.

It is next insisted that the trial court erred in its instructions to the jury. The instructions are as follows:

"The court instructs the jury that if they believe from the evidence that defendant company contracted and agreed with N. T. Denton that it would deliver to plaintiff, J. M. Maxberry, a message bearing the news of the death of plaintiff's sister, and you

believe that the agents or servants of defendant company failed to use extraordinary diligence to deliver same within an usual and ordinary time after receiving same, and you believe from the evidence that plaintiff was prevented from attending the funeral of his sister, then you will find for him the damages sustained thereby; the measure of damages being for any mental pain or anguish suffered or endured by plaintiff, if any, because he was deprived of attending his sister's funeral, and an opportunity to view the remains of his said sister, not exceeding the sum charged in the petition, $1,000. (2) The court instructs the jury that, unless they believe from the evidence that defendant company contracted and agreed to deliver the message to J. M. Maxberry in person, then they were required to use only ordinary diligence or effort to reach him, or if you believe from the evidence the defendant only agreed and contracted with N. T. Denton to deliver the message to the tie woods, and that the $1.50 paid by Denton only contemplated the delivery of the message to the tie woods, then the law is for the defendant, and you should so find. (3) The court instructs the jury that ordinary care is that degree of care that a majority of ordinarily prudent men would be expected to exercise when surrounded by the same or similar circumstances as were plaintiff and defendant's servants and agents in this case; that negligence means a want of ordinary care. Extraordinary care is that degree of care that a majority of ordinarily prudent men would be expected to use in those situations or cases where they have contracted to do a specific thing and are required by the emergencies of the situation to use the utmost diligence in performing the thing contracted; and you are further instructed

that in this connection you must take into considera-
tion the same or similar circumstances as surrounded
plaintiff and defendant's agents in this case.''

In the instructions above given the trial court
seems to have proceeded upon the idea that if appel-
lee's testimony were true, appellant agreed to deliver
the message at all events, and such agreement
placed upon it the duty of using extraordinary care.
Such is not the rule in this state, nor, in fact, the gen-
eral rule. When a telegraph or telephone company
accepts a message to be delivered beyond its ordi-
nary limits for delivery of messages, and exacts a
fee in advance, this fact does not impose upon the
company any greater diligence than is required in
the case of a message directed to a party within its
delivery limits. The company's full duty is per-
formed when it uses all reasonable diligence, or, as
some authorities express it, ordinary care to deliver
the message within a reasonable time. Western
Union Tel. Co. v. Elliott (Ky.) 115 S. W. 228, 131 Ky.
340, 27 Am. & Eng. Encyc. of Law, p. 1030. We,
therefore, conclude that the court's instructions were
not a proper presentation of the case. Upon the re-
turn of the case the court will, if the facts be the
same, instruct the jury as follows:

''(1) If you believe from the evidence that the de-
fendant company contracted and agreed with N. T.
Denton that it would deliver to plaintiff, J. M. Max-
berry, a message bearing the news of the death of
plaintiff's sister and calling him to the phone, and
that the agents or servants of the defendant company
failed to use reasonable diligence to deliver the same
within a reasonable time after receiving same, and
that plaintiff was thereby prevented from attending
the funeral of his sister and viewing her remains,

you will find for plaintiff. Unless you so believe you will find for the defendant. (2) If you believe from the evidence that the defendant agreed and contracted with N. T. Denton merely to deliver the message to the tie woods, and that the $1.50 paid by Denton only contemplated its delivery at that point, you will find for the defendant. (3) If you find for the plaintiff, you will award him such damages, not exceeding $1,000, as you believe from the evidence will fairly and reasonably compensate him for any mental pain or anguish which you may believe he endured by reason of being deprived of viewing the remains of his sister and attending her funeral.''

The judgment is reversed, and cause remanded for a new trial consistent with this opinion.