## WESTERN UNION TELEGRAPH CO. v. WILLIAMS et al.   (No. 8813.)

(Court of Civil Appeals of Texas. Galveston. March 4, 1926. Rehearing Denied April 8, 1926.)

**1. Telegraphs and telephones ⊂⇒73(1)—Negligence of telegraph company in delaying delivery of message held for jury.**

Negligence of telegraph company in delaying delivery of message received on Sunday in small town, where several other persons had same name as addressee, who was prevented from attending father's funeral by such delay, held for jury.

**2. Witnesses ⊂⇒331½—In action for delay in delivering telegram, evidence that messenger boy had known addressee for years held material as bearing on his credibility as witness.**

In action against telegraph company for delay in delivering telegram, evidence that messenger boy had known addressee for years held material as bearing on his credibility as witness.

**3. Telegraphs and telephones ⊂⇒38(2)—That messenger boy knew addressee cannot be considered as evidence of telegraph company's negligence in failing to deliver telegram.**

That messenger boy had known addressee of telegram for number of years cannot be considered as evidence of telegraph company's negligence in failing to deliver such telegram.

**4. Principal and agent ⊂⇒178(1).**

Knowledge of agent, not acquired in performance of duties of employment, cannot be imputed to principal.

Appeal from District Court, Galveston County; J. C. Canty, Judge.

Action by Mrs. Mollie F. Williams and husband against the Western Union Telegraph Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Levy & Barker, of Galveston, and Francis R. Stark, of New York City, for appellant.

Frank S. Anderson, of Galveston, for appellees.

GRAVES, J. Appellant makes a statement of the cause, which the appellee adopts as substantially correct, as follows:

"This suit was brought by Mrs. Mollie F. Williams, joined pro forma by her husband, J. C. Williams, against the Western Union Telegraph Company, a corporation, and is predicated upon the alleged negligence of the defendant in failing promptly to deliver two certain telegrams described in the original petition, which failure was alleged to have prevented the plaintiff from attending the funeral of her father.

"It is alleged in said petition that on or about April 19, 1924, one Robert Fain, plaintiff's father, was ill in the city of Cleburne, and that about 11:50 in the evening of April 19, Mrs. D. G. Wilson delivered to the agent of the Western Union Telegraph Company at Cleburne, Tex., the following telegram:

" 'Mrs. J. C. Williams, Texas City, Texas, Do not think Grand Dad can live till day come at once if possible.     D. G. Wilson.'

"That on or about 3:20 o'clock p. m. of April 20th the said Mrs. D. G. Wilson delivered to defendant's agent in Cleburne the second telegram, reading as follows:

" 'Mrs. J. C. Williams, Texas City, Texas. Grandpa died at twelve today leave for Chillicothe on number six at seven twenty this evening.     D. G. Wilson.'

"Plaintiff further alleged that, if said telegrams had been delivered promptly, she would have started for the city of Cleburne in time to have seen her father, Robert Fain, before he died, and could have reached Chillicothe in time to have attended the funeral of her said father. That in consequence of said negligent delay plaintiff suffered great disappointment, grief, and emotional pain and anguish in her damage in the sum of $2,000, and that by reason of the gross negligence of the defendant she is entitled to recover the additional sum of $900 as exemplary damages.

"Defendant, on June 23, 1924, filed its first amended original answer, in which it is denied that the defendant, its agents, servants, and employees, were guilty of negligence in the respects complained of by plaintiff, and alleged that, acting by and through its agents, servants, and employees, it exercised all reasonable and proper diligence to deliver said message to the addressee, Mrs. J. C. Williams, without delay, but that it was unable to do so in time for her to reach the funeral of her father, Robert Fain. It is alleged that the town of Texas City was composed largely of a transitory, shifting population, scattered over a wide territory, rendering it difficult to locate persons residing in said town; that, notwithstanding the fact that the date of the arrival of said telegram was Sunday, and that all business houses, as well as the post office, were closed, the agents, servants, and employees of defendant exhausted every possible means of information, and exercised all reasonable and proper diligence in an attempt to locate the plaintiff, who resided in a remote portion of the town at a distance of more than a mile and a half from defendant's office.

"The case was called for trial March 2, 1925, and on March 3, 1925, the case was submitted to the jury on special issues, and upon the answers of said special issues returned by the jury into open court. The court rendered judgment on March 9, 1925, in favor of the plaintiff in the sum of $500, together with costs of court."

The special issues, which followed definitions of ordinary care, negligence, proximate cause, and some other features, embodied inquiries as to whether there was negligence with reference to either of the telegrams in the respect alleged in the petition, and, if so whether or not it proximately prevented the appellee from attending the funeral of her father; also whether or not she could and would have attended the funeral if either

of the telegrams had been promptly delivered, and the amount of her damage. All were answered favorably to appellees.

The only complaint appellant makes upon appeal is of the submission of the cause to the jury at all; its contention being that its request below for a peremptory instruction in its favor should have been granted, the single proposition in this court being the following:

"Since the record in this case ·fails to show any negligence on the part of the defendant, Western Union Telegraph Company, and since said record shows by conclusive and uncontroverted evidence that the appellant, its agents, servants, and employees, used a greater degree of care and diligence than the law requires in attempting to deliver the messages in question, the appellant's request for peremptory instruction in the court below should have been granted, and the judgment of ·said court should be reversed and rendered in favor of the appellant."

After carefully considering the record and statement of facts, we are unable to hold that the cause should have been taken from the jury, but, on the contrary, conclude that the facts and circumstances in evidence clearly made the question as to whether or not the telegraph company was negligent in failing to properly deliver the telegram one for the jury.

[1] No contention is made that the verdict is against the weight and preponderance of the evidence, and the single assertion of appellant that it was undisputedly and conclusively shown to have used more than due care in the effort to deliver the telegrams rests, we think, on too restricted a view of the measure of its duty in the circumstances. It was shown that the first telegram, filed at the company's office in Cleburne about 11 o'clock p. m., on April 19,. was received at its office in Texas City at 8:30 the next morning; that the second one, or death message, filed with it at Cleburne about 1 o'clock ⸳p. m., April 20th, was received at the Texas City office at 5:53 p. m. of ·the same day; that Mr. and Mrs. J. C. Williams, at the time involved, lived within the city limits of Texas City about one or one-quarter miles from the telegraph company's office, and had then been living in the town for about 17 years; that Mr. Williams had known Frank Murphy, appellant's messenger boy, practically all his life; that Frank himself lived within two blocks of where the Williamses lived in the west end of Texas City, and passed their house every day, when he went to school, having also often visited there; that he, being only 15 years old, had known the appellees all his life, better than any other Williams in Texas City, and although told by the manager of the Western Union to find out about all the Williamses living in the town, forgot all about these old people, and did not take either of the messages to them· at all;

that neither of the telegrams in suit was delivered until· several days after the funeral of Mrs. Williams' father, and then only upon Mr. Williams' calling at the telegraph office for them, after they had been advised by letter of the father's death and of the sending of the messages; that, if either message had been delivered as late as 7 p.· m. on the day they thus reached Texas City, it would have been in time; and that both the appellees were, and had for a number of years been, comparatively well known in the town, which, though small, is incorporated and laid off in city blocks. Mr. Williams had worked there for perhaps 15 years with different business concerns, and had for several years been a customer of the First National Bank, to the officers of which both he and his wife were well known, as they were also to the man who had been postmaster of the town from 1914 to 1923.

In addition, appellant offered no explanation of the nearly one hour's delay in the transmission of the death message from Cleburne to Texas City, and its manager at the latter point, himself being only 17 years old, admitted making no effort at all to deliver it that day after so receiving it, although knowing at the time that it was a death message, merely saying in that connection that the messenger boy "was out with another message." He further testified that he made no inquiry either of the postmaster or any other business man as to whether or not they knew Mrs. J. C. Williams, despite the fact that the names of the merchants were in the telephone directory at the time.

To state its clear effect, the testimony first referred to made out a prima facie case of negligence against the telegraph company, which it had the burden of overcoming. Tel. Co. v. Smith (Tex. Civ. App.) 33 S. W. 742;. Tel. Co. v. Boots, 31 S. W. 825, 10 Tex. Civ. App. 540; and Tel. Co. v. Bouchell, 67 S. W. 159, 28 Tex. Civ. App. 23.

It did not meet the burden thus cast upon it. True, the manager and the messenger boy testified to having made a number of efforts and inquiries in the attempt to locate Mrs. J. C. Williams, and to the boy's having gone to the homes in Texas City of three separate Williams families (all of them, however, had different· initials from those of appellees) on the day of its· receipt with the first message, but, as was said by our Supreme Court in Tel. Co. v. Cooper, 9 S. W. 598, 71 Tex. 507, 1ˑL. R. A. 728, 10 Am. St. Rep. 772:

"Going to Doctor Keating's office was not the extent of the messenger's duty. His residence was close by, he was well known in the town, and the messenger knew him, and knew where his residence was."

So here, the residence of these appellees being. within the corporate limits of the small town, not more than a mile and a quarter

away, and both they and location of their residence being not only well known generally to other townspeople but to appellant's messenger boy in particular, ordinary care and prudence would have suggested other and further efforts to reach them with messages, each of which upon its face conveyed to them news of such serious character. And this notwithstanding the fact that the day was Sunday, when appellant's office hours were short and general lines of business houses were closed. It is undisputed that both messages were actually received during its office hours on that day; that the manager himself took them off the wires; that there was no mistake therein as to the names and residence of the addressees; that the contexts of both carried notice of their seriousness; and that the manager and the messenger boy as well were acquainted with and realized this fact. In the face of this situation, the manager confessedly sent only the first of them to people whose initials were different, making no effort of any sort to deliver the second one at all, nor any inquiry with reference to either from any merchant in the town, while the young messenger boy forgot completely the only Williams he seems to have known in the community, "and wandered about looking for some one by that name." In such circumstances, whether these representatives of the company were remiss in the performance of their duty and negligent in regard to the delivery of the messages were questions for, and properly left to, the jury. Tel. Co. v. Cooper, supra, at pages 600, 601 (71 Tex. 507).

[2-4] Inveighing against the effect of the messenger boy's having previously so long and so well known the appellees here, the appellant advances this proposition:

"We do not believe that this court will hold that a corporation should be held responsible for prior knowledge, or information received by its employees not in the course of their business, and not in connection with the particular transaction involved. Such a holding would place an unfair burden upon a corporation. If this information had been received by Frank Murphy while he was attempting to deliver said message and in the course of his employment, then the company, we admit, would justly be chargeable with his oversight. But, here we have information obtained by a boy concerning the names of persons whom he had been taught to call Grandpa and Grandma, rather than Williams, obtained prior to his employment by the Western Union Telegraph Company, and not in anywise connected with the particular transaction,"

—citing in support Wiggs v. Tel. & Tel. Co. (Tex. Civ. App.) 110 S. W. 179; Tel. Co. v. Weniski, 106 S. W. 486, 84 Ark. 457; Pope v. Western Union Tel. Co., 14 Ill. App. 531;

Western Union Tel. Co. v. Hall (C. C. A.) 287 F. 297.

As we appraise them, these authorities have to do with the matter of notice to the telegraph company of the importance of the telegram or communication—a very different question from that here involved. There was no contention that this messenger boy's prior acquaintance with the appellees was either notice to the telegraph company of their place of residence. or that it should be held responsible therefor, but it was presented as bearing upon the issue as to his negligence or not in failing to deliver the message as well as upon his credibility as a witness in the case. It was clearly material upon those questions.

It follows that the trial court's judgment should be affirmed. That order will be entered.

Affirmed.

### On Motion for Rehearing.

PLEASANTS, C. J. I agree with appellant that the fact that its messenger boy had known appellee and her husband for a number of years cannot be considered as evidence of negligence on the part of appellant in failing to deliver the telegram, when it is further shown that the boy did not know that the name of appellee's husband was J. C. Williams, and the fact that he knew these old people whose name was Williams did not occur to him when he was given the telegram for delivery. The general rule that knowledge of an agent not acquired in the performance of the duties of his employment cannot be imputed to the principal is so well settled that citation of authority in its support is . unnecessary. Under this rule it seems to me that the failure of the boy when he was given' the telegram for delivery to recall the fact that he knew this old couple whose name was Williams, and to inquire of them whether the telegram was intended for appellee, if negligence on his part, is not such as could be charged to appellant. The Cooper Case, cited in our original opinion, is not in point. In that case the messenger knew the addressee in the telegram as the person to whom the message was sent, and knew where he lived, and the question of whether in such case the messenger discharged his duty to use ordinary care to deliver the telegram by going to the office of the addressee where he found no one to receive the telegram, and making no further effort to deliver it, was clearly a question for the jury.

I agree, however, in the conclusion that the evidence as a whole is sufficient to raise the issue of appellant's negligence in failing to deliver the telegram in time for appellee to have attended her father's funeral, and therefore the motion for rehearing should be refused.