## WESTERN UNION TELEGRAPH CO. v. OWINGS et al.

### No. 1140.

Court of Civil Appeals of Texas. Eastland.

Oct. 13, 1933.

Francis R. Stark, of New York City, and Cooper & Lumpkin, of Amarillo, for appellant.

W. F. Robinson and Carl Rountree, both of Lamesa, for appellees.

LESLIE, Justice.

The opinion of the court on the first appeal in this case is to be found in the 38 S.W.(2d) 831. The last trial on the second amended petition was before the court without a jury, and resulted in a judgment in favor of the plaintiff. The defendant appeals. The basis of the suit is the alleged negligent failure of the appellant to transmit a death message in which the appellees were interested.

By ten propositions the judgment is attacked as erroneous under the law and the evidence. It will be unnecessary to consider in detail and separately each of the propositions. Those discussed are deemed controlling, and the result reached renders it unnecessary to devote any attention to those unnoticed. By a group of propositions, the appellant contends that, in transmitting the telegram, and in its effort to deliver the same, it exercised, under the circumstances, ordinary care and diligence as disclosed by the undisputed testimony.

We think this group of propositions must be sustained. The testimony will not be set out in full, as it would unnecessarily lengthen the opinion, but the material portions thereof will be indicated. By the eighth proposition in particular, the appellant submits that under the evidence the judgment for the appellee is erroneous, as it was not guilty of negligence in failing to promptly transmit and deliver the telegram.

This court has carefully considered the statement of facts. The testimony discloses that J. B. Butler, the brother of Mrs. Mattie Owings and the sender of the message, delivered it to the company for transmission at Post City, Tex., on March 12, 1930, at 8:48 a. m. At 9:03 a. m., the same day, or fifteen minutes later, it was in Lamesa. The message read as follows:

"Post, Texas, March 12, 8:48 a. m.
"To W. F. Owings, Lamesa, Texas.
"Mother will be buried at Anson Three Thirty today.
"[Signed] J. B. Butler."

Obviously the message was not addressed to Mrs. Mattie Owings. The appellant, through its agents, took immediate steps to deliver it to the addressee. Being a death message, it was given a preference over other messages. The agent went at once in search of W. F. Owings, consulting directories, city, rural, and telephone. The company's own permanent files were examined in search of information pertaining to W. F. Owings. A messenger was sent to the post office with instructions to make further inquiry and extended search for said party. This failing to disclose the whereabouts of the addressee, the agent phoned persons by the name of "Owens" to ascertain if by mistake that name was intended. He called the Chamber of Commerce and phoned the superintendent of public schools for information concerning W. F. Owings, and obtained none. The Retail Merchants' Association was consulted without results. Such information was sought

from numerous persons calculated to be well acquainted with the citizenship of Lamesa, a town of about 3,600 people. Among such consulted were newsboys, the hotels, Vaughns Chevrolet Company, and others not necessary to state. The county clerk, deputy sheriff and postmaster testified they did not at the time know W. F. Owings or his wife, Mattie Owings. None of the inquiries yielded any information concerning the Owings.

The defendant's agent then sent a service message to Post City, the origin of the first message, for further information concerning those interested in the message. The service message was sent from Lamesa at 9:47 a. m. and a reply was received from Post City the same day, March 12th, at 9:58 a. m., directing the telegram be mailed to W. F. Owings, General Delivery, Lamesa, Tex. This was done in an envelope properly addressed and stamped. It appears to have been mailed at 10:06 a. m. and stamped at 11 a. m. the same day. Concerning the later receipt of the message and the circumstances surrounding the family's settlement and residence in Lamesa, Mrs. Owings testified:

"W. F. Owings is my husband. We now live in Lamesa. We moved from Slaton to Lamesa. We lived in Slaton two or three months. We lived in Jones County close to Anson the summer before but did not have a place and just stayed there and worked. It had been sometime since we have had a fixed residence. We lived at Floydada over a year. From there we moved to Anson, then Slaton and stayed there two or three months, then we moved to Lamesa in December and we have been here three or four months at the time I received the message. My name on March 12, 1930, did not appear in the city directory nor in the telephone directory, nor on the tax rolls of this city. My children were not in school. I had one child within scholastic age but was not in school. On March 12, 1930, my husband, W. F. Owings, was engaged at Seminole. He worked there about two months or longer. He was at Seminole which was about 35 or 40 miles from here when this message was sent. He would go the first of the week to Seminole and come back on Saturday and it was during the time that he was at Seminole that this message was sent. He had been over there about two months at that time at Seminole. He was engaged in the cement business. * * * *He was never engaged in the cement business at Lamesa.*"

The witness further testified: "I stated that the message was taken out of the Post Office on Thursday afternoon by my boy. He did not give it to me until after my husband came home on Saturday night from Seminole. He kept the message before giving it to me. I went to the Post Office on Wednesday about ten o'clock or eleven o'clock. I did not have a post office box but got the mail at the General Delivery. My brother, J. B. Butler, knew that I got my mail from the General Delivery."

Butler, the sender of the message, further testified that on delivering the message for transmission "I did not tell the Agent who W. F. Owings was. The message I sent was to W. F. Owings at Lamesa, Texas, * * * and *I told the Agent that Mr. Owings was a concrete man living in town and that they could find him somewhere in town* and this is the information that I gave the Agent concerning Mr. Owings. * * * The message was addressed straight to Lamesa. At that time I did not know the street address of W. F. Owings and did not know where they lived in town. * * * The Agent at Post asked me how he could find Mr. Owings and I believe he said these folks or these people. * * * The Agent did not ask me what to do with the message in case Mr. Owings could not be located. He asked my brother-in-law who was with me that question and my brother-in-law told the Agent to mail it in case they could not locate Mr. Owings and the Agent asked me what to do with it if they could not service it; Mail it? and I told my brother-in-law what to do and then left." (All italics ours.)

Under the authorities generally, among which are Hargrave v. Western Union (Tex. Civ. App.) 60 S. W. 687; Western Union v. Cox (Tex. Civ. App.) 74 S. W. 922; Western Union v. Elliott, 131 Ky. 340, 115 S. W. 228, 22 L. R. A. (N. S.) 761, the evidence in this record, as above indicated and being uncontradicted, clearly fails to make out a case of negligence against the appellant. In fact, the testimony indicates a very high degree of diligence and care in an effort to deliver the message to the addressee, whose particular whereabouts *at the time and whose business* in Lamesa was quite as unknown to the sender of the message as it was to the telegraph company.

Further, under the circumstances, the telegraph company was only required under the terms of its contract to transmit the message to W. F. Owings at Lamesa where the sender directed it. Stewart v. Western Union Tel. Co. (Tex. Civ. App.) 158 S. W. 1034; Western Union Tel. Co. v. Swearingen, 95 Tex. 420, 67 S. W. 767; Western Union Tel. Co. v. Shockley, 57 Tex. Civ. App. 30, 122 S. W. 945; Western Union Tel. Co. v. Taylor, 3 Tex. Civ. App. 310, 22 S. W. 532; Russell v. Western Union Tel. Co. (Tex. Civ. App.) 261 S. W. 481. The telegraph company undoubtedly used ordinary care to discharge such obligation, and in the instant case was unable to deliver the message because W. F. Owings, the addressee, was not in Lamesa at the time, but was 35 or 40 miles away at Seminole, Tex. The company had no duty, under the circumstances, to make delivery of

the message in Seminole; the above authorities so hold.

■ At this point it must be recognized that under the terms of the contract no obligation rested on the appellant to deliver to Mrs. Mattie Owings, the wife, the telegram addressed to W. F. Owings, the husband. Western Union Tel. Co. v. Mitchell, 91 Tex. 454, 44 S. W. 274, 276, 40 L. R. A. 209, 66 Am. St. Rep. 906; Western Union Tel. Co. v. Moseley, 28 Tex. Civ. App. 562, 67 S. W. 1059; Western Union v. Hendricks, 29 Tex. Civ. App. 413,.68 S. W. 720.

In the Mitchell Case, our Supreme Court through Judge Brown said: "The wife, as such, is not in law the general agent of her husband; and we know of no principle of law that would justify the conclusion that it was the duty of the defendant to deliver the message in this case to Mrs. Mitchell, nor that such a delivery to her would have satisfied the obligation of the telegraph company to Mitchell."

The courts of this state have uniformly followed this authority.

■ We now specifically consider another phase of the appellee's contentions, based on the testimony of Mrs. Owings, her son, and another. It is to the effect that, at the time the message was received, the telegraph company's messenger boy, Phenix Riggs, had a knowledge of the Owings family. Mrs. Owings testified: "I knew one of the telegraph employees at Lamesa at the time the message was sent, and that was Phenix Riggs * * * the Riggs boy had visited my boys and got water from our pump * * * they got water from our pump about twice a day during January, February and March, at which time Phenix Riggs was working for the Western Union carrying messages."

The Owings boy testified in substance that he had known Phenix Riggs about six months, and that he knew him in March; that he had been to their house and gotten water; that he had ridden on the bicycle with him; and that the Riggs boy knew that his last name was Owings. However, there is no evidence that the messenger boy knew the name "W. F. Owings" was the name of the husband of Mrs. Owings or that he knew it to be the name of the head of that household.

A careful study of this line of testimony convinces us that, if it be conceded that the messenger boy had such acquaintanceship with the Owings as that detailed, all such knowledge on his part was acquired not in the performance of the duties of his employment, and cannot, therefore, be imputed to his employer, the telegraph company. As said by Chief Justice Pleasants in Western Union Tel. Co. v. Williams (Tex. Civ. App.) 283 S. W. 604, 606, in an analogous case: "The general rule that knowledge of an agent not acquired in the performance of the duties of his employment cannot be imputed to the principal is so well settled that citation of authority in its support is unnecessary. Under this rule it seems to me that the failure of the boy when he was given the telegram for delivery to recall the fact that he knew this old couple whose name was Williams, and to inquire of them whether the telegram was intended for appellee, if negligence on his part, is not such as could be charged to appellant."

This, in our judgment, is the correct legal effect of the alleged knowledge which the plaintiffs charge to the messenger boy.

As stated, this is the second appeal of this case. The testimony has been fully presented, and the plaintiffs' testimony taken alone precludes recovery for the reasons above stated. The judgment of the trial court will therefore be reversed, and judgment here rendered in favor of the appellant.